UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------X

LM Insurance Corporation,

                  *Plaintiff*,

    -against-

Safety National Casualty Corporation,
Cincinnati Insurance Company,

                  *Defendants*.

-------------------------------------X

**MEMORANDUM AND ORDER**

21-CV-1802(KAM)(RML)

**KIYO A. MATSUMOTO, United States District Judge:**

Plaintiff LM Insurance Corporation ("LM"), an insurance company, commenced the instant action against two other insurance companies, Defendants Safety National Casualty Corporation ("Safety") and Cincinnati Insurance Company ("Cincinnati") (together, "Defendants") on April 2, 2021. (ECF No. 1, Complaint.) LM seeks a declaratory judgment that Defendants must defend and indemnify LM's insured, Pergament Mall of Staten Island LLC ("Pergament"), in an underlying action in New York state court that also concerns Safety's insured, Raymours Furniture Company, Inc. ("Raymours"), and Cincinnati's insured, Einstein Construction Group, LLC ("Einstein"). (*Id.* at ¶¶ 53-63.) LM additionally seeks monetary damages for the cost of the underlying litigation. (*Id.*)

Safety and Cincinnati filed crossclaims against each other, both asserting that any insurance coverage of Pergament is

1

secondary, or excess, to the other's coverage. (ECF Nos. 14, 16, 23.)  Safety also seeks a declaratory judgment that Cincinnati must defend and indemnify Safety's insured Raymours — in addition to LM's insured Pergament — in the underlying action, and seeks damages. (ECF No. 23 at ¶¶ 82-86.)  The Court has diversity jurisdiction.

Presently before the Court is LM's motion for summary judgment[1] against Defendants Safety and Cincinnati, Safety's cross-motion for summary judgment against Cincinnati, and Cincinnati's cross-motion for summary judgment against LM and Safety.[2] (*See* ECF No. 77, Safety Motion for Summary Judgment; ECF No. 78, Cincinnati Motion for Summary Judgment; ECF No. 79, LM Motion for Summary Judgment.)

LM argues that Safety's insurance policy with Raymours includes coverage for Pergament, as an "additional insured" on the policy, based on the language of Pergament's lease with Raymours. LM also argues that Cincinnati's insurance policy with Einstein includes coverage for Pergament, as an "additional insured" on the policy, based on the language of Einstein's April 3, 2017 contract

---

[1] LM repeatedly asserts that it seeks partial summary judgment against Safety and Cincinnati but does not articulate any claims for which it does not seek summary judgment. (*See* ECF Nos. 79, LM Motion for Summary Judgment, 79-1, LM Memorandum in Support.)  Accordingly, this Court considers LM's motion as seeking summary judgment on all claims against Safety and Cincinnati.

[2] LM settled its claims against Safety and withdraws its motion as to Safety. (ECF No. 86, LM Reply Brief at 1 n.2.)  Safety's crossclaims as to Cincinnati remain.

with Raymours ("2017 Raymours-Einstein Contract"). (ECF No. 79-1, LM Memorandum in Support ("LM Mem.") at 16-27.) LM contends that Safety and Cincinnati's coverage of Pergament is primary to LM's coverage. (*Id.*)

Safety argues that the 2017 Raymours-Einstein Contract — and Cincinnati's insurance policy with Einstein — requires Cincinnati to defend and indemnify Raymours in the underlying action. (ECF No. 77-1, Safety Memorandum in Support ("Safety Mem.") at 2-13.)

Cincinnati argues that Cincinnati's policy with Einstein does not name or include Pergament as an additional insured. (ECF No. 78-1, Cincinnati Memorandum in Support ("Cincinnati Mem.") at 11-25.) Cincinnati also contends that Safety lacks standing to assert crossclaims against Cincinnati regarding coverage of Raymours.

For the reasons set forth below, LM's motion is **GRANTED in part** and **DENIED in part**. Safety's motion is **GRANTED in part** and **DENIED in part**. Cincinnati's motion for summary judgment against LM's claim for a declaratory judgment is **GRANTED,** and Cincinnati's motion for summary judgment against Safety's crossclaims is **DENIED.**

## BACKGROUND

The following facts are drawn from the parties' submissions in connection with this motion, including LM's Rule 56.1 Statement of Facts, Defendants' Counter 56.1 Statements, LM's Reply 56.1

Statement, and the parties' exhibits.[3]  Upon consideration of a motion for summary judgment, the Court must construe the facts in the light most favorable to the non-moving party.  *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005) (citation omitted).

The Court initially notes that all parties have failed to fully comply with Local Rule 56.1 and this Court's Chambers Practices regarding Rule 56.1 Statements, which alone would provide a basis to deny all the parties' motions.  *Suares v. Cityscape Tours, Inc.*, 603 F. App'x 16, 17 (2d Cir. 2015) (affirming district court's denial of motion for summary judgment based on failure to comply with Local Rule 56.1) (summary order). At summary judgment, the moving party must establish in its Rule 56.1 Statement that there are no disputed issues of material fact and support its statements with admissible evidence; the non-moving party must proffer, in a Counter 56.1 Statement, factual

---

[3] (*See* ECF No. 48-50, Safety Rule 56.1 Statement; ECF No. 48-1, Declaration of Geoffrey Doran; ECF No. 48-6, Declaration of Bradley Levien; ECF No. 48-13, Declaration of Sherri Pavloff; ECF No. 50-1, LM Rule 56.1 Statement; ECF No. 50-2, Declaration of Sean Farris; ECF No. 50-3, Declaration of Marshall T. Potashner; ECF No. 54-19, Cincinnati Rule 56.1 Statement; ECF No. 54-1, Declaration of Laurie A. Vahey; ECF No. 55, Cincinnati Counter to LM Rule 56.1 Statement; ECF No. 56, Cincinnati Counter to Safety Rule 56.1 Statement; ECF No. 58, Safety Counter to Cincinnati Rule 56.1 Statement; EC No. 62, LM Counter to Cincinnati Rule 56.1 Statement; ECF No. 62-1, Declaration of Florence Langer; ECF No. 63, Safety Reply Rule 56.1 to Cincinnati Opposition; ECF No. 64, Cincinnati Reply Rule 56.1 to Safety Opposition; ECF No. 65, LM Reply Rule 56.1 to Cincinnati Opposition; ECF No. 66, Cincinnati Reply Rule 56.1 to LM Opposition.)

All pagination citations concerning the factual background, except for citations to deposition transcripts or paragraphs asserted in Rule 56.1 Statements, refer to the page number assigned by the Court's CM/ECF system.

statements supported by admissible evidence sufficient to raise a genuine dispute of material fact for trial.   Under Local Rule 56.1(b), "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party."   The Second Circuit has emphasized that this requirement is mandatory. *See Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) ("In the Southern and Eastern Districts of New York, a party opposing a motion for summary judgment *shall* file a short and concise statement of the material facts in dispute accompanied by citation to evidence which would be admissible.").   "Local Rule 56.1 is designed to place the responsibility on the parties to clarify the elements of the substantive law which remain at issue because they turn on contested facts."   *Id.*

This Court's Chambers Practices provide additional detail regarding Local Rule 56.1:

> A party's 56.1 Counter Statement to a 56.1 Statement must quote, verbatim, the 56.1 Statement, including all citations, and respond to the moving party's statements of fact immediately beneath each statement. If an opposing party chooses to include additional material facts alleged to be in dispute in their 56.1 Counter Statement, they must do so in a separately titled section, with each of the paragraph numbers consecutively following the response paragraphs.

> . . .

> A moving party's 56.1 Reply statement may only respond to the opposing party's Counter Statement of additional material facts and must do so by stating the moving

party's response immediately beneath each statement of additional material fact.

. . .

Each paragraph in a 56.1 Statement must contain an assertion of a material undisputed fact, not a description of evidence.

Chambers Practices of Judge Kiyo A. Matsumoto at 6.

Here, Defendant Cincinnati failed to provide a Rule 56.1 Statement and Counter 56.1 Statements that fully adhere to the above requirements. Rather than assert material undisputed facts, Cincinnati's Rule 56.1 Statement repeatedly describes evidence in the record, e.g. that "Einstein President, Jennifer Warren, testified that . . . she never observed the complete final signed contract."[4] (ECF No. 54-19, Cincinnati Rule 56.1 Statement at ¶ 48.)

Cincinnati's Counter Rule 56.1 Statements — filed in opposition to both LM's Rule 56.1 Statement and Safety's Rule 56.1 Statement — include a section entitled "Additional Material Facts." (ECF No. 55, Cincinnati Counter to LM Rule 56.1 Statement at 44; ECF No. 56, Cincinnati Counter to Safety Rule 56.1 Statement at 32.) Rather than stating additional material facts alleged to be in dispute, however, Cincinnati restates its denials to a select

---

[4] In at least one instance, Safety also describes evidence in the record in a conclusory manner rather than assert a material issue of undisputed fact. (*See* ECF No. 48-20, Safety Rule 56.1 Statement, at ¶ 5 ("[The] acceptance [of tender] is vague . . . .").)

number of the opposing party's statements of material facts.[5]
(*See, e.g.*, ECF No. 56, Cincinnati Counter to Safety Rule 56.1
Statement at ¶¶ 2, 5, 9, 12, 13.)

Similarly, both Safety and Cincinnati failed to follow
Chambers Practices in filing Reply Rule 56.1 Statements. Both
parties' Reply Rule 56.1 Statements respond to the non-moving
party's *entire* opposition in the Counter Rule 56.1 Statement,
rather than respond solely and specifically to the additional
material facts submitted in the Counter Rule 56.1 Statement. (*See,
e.g.*, ECF No. 63, Safety Reply Rule 56.1 to Cincinnati Opposition
at ¶¶ 1-10; ECF No. 64, Cincinnati Reply Rule 56.1 to Safety
Opposition at ¶¶ 1-10; ECF No. 66, Cincinnati Reply Rule 56.1 to
LM Opposition at ¶¶ 1-10.)

Notwithstanding the failure to comply with Chambers
Practices, to the extent that any party's Rule 56.1 Statement does
not assert material facts supported by admissible evidence, the

---

[5] Cincinnati's Counter Rule 56.1 Statement also repeatedly disputes LM's
proffered facts without citing to admissible record evidence, stating only that
"the cited material does not support LM Insurance's assertion." (*See, e.g.*,
ECF No. 55, Cincinnati Counter to LM Rule 56.1 Statement at ¶¶ 50, 54-55, 64-
65); *see also United States v. Gentges*, 531 F. Supp. 3d 731, 735 n.1 (S.D.N.Y.
2021) ("Any party's failure to provide record support for its challenge to
another party's factual statement could allow the Court to deem the challenged
facts undisputed." (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.
2001))).  LM also fails to support all its disputes of material facts with cites
to admissible record evidence in its Counter Rule 56.1 Statement submitted in
opposition to Cincinnati's Rule 56.1 statement.  In at least three instances,
LM states only that "quotes are incomplete and taken out of context," and cites
to an exhibit generally, but does not cite to a specific portion of the exhibit
to support LM's assertion that a quote was "incomplete" or "taken out of
context."  (ECF No. 62-1, LM Counter Rule 56.1 Statement in Opposition to
Cincinnati, at ¶¶ 68-69, 89.)  LM thus fails to meaningfully dispute
Cincinnati's facts in those instances.

Court declines to find that the party has sufficiently established an undisputed material fact. To the extent that any party's Counter Rule 56.1 Statement describes facts in dispute but does not cite to record evidence in support of its opposition, the Court similarly declines to find a genuine dispute of fact. *See* Fed. R. Civ. P 56(e)(2); *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 312 (2d Cir. 2008) ("Under Rule 56, it is the court's responsibility to determine whether the opposing party's response to the assertion of a material fact presents a dispute that is genuine."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (collecting cases) (holding that "responses that do not point to any evidence in the record that may create a genuine issue of material fact do not function as denials, and will be deemed admissions of the stated fact." (alteration, citation, and internal quotation marks omitted)); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

Finally, a significant purported dispute in all three parties' Rule 56.1 submissions concerns whether the 2017 Raymours-Einstein Contract was properly authenticated and may be considered. Authentication is a legal question for the Court to decide, not a dispute of fact for the jury to resolve. *Cf. United States v. Dennis*, 183 F.2d 201, 231 (2d Cir. 1950) ("[T]he judge

8

is always to decide . . . any issues of fact on which the competence of evidence depends, and that, if [the judge] decides it to be competent, [the judge] is to leave it to the jury to use like any other evidence[.]"). As discussed in detail herein, the Court finds that the 2017 Raymours-Einstein Contract was sufficiently authenticated. Accordingly, the Court finds to be undisputed any statement of material fact where the purported dispute of fact relied solely on the argument that the 2017 Raymours-Einstein Contract was not properly authenticated.

Unless otherwise noted, the following facts are undisputed, or the opposing party has not proffered admissible evidence in the record to create a genuine dispute. Disputes are noted where the parties have submitted admissible evidence to establish a factual dispute.

## I. Factual Background

### A. Underlying Action

On December 7, 2017, Dean Kelly commenced an action in New York state court, *Dean Kelly v. Pergament Mall of Staten Island LLC, Raymours Furniture Company, Inc., and Raymour & Flanigan Properties, LLC*, Index No. 31720/2017E. (ECF No. 55, Cincinnati Counter to LM Rule 56.1 Statement at ¶ 1.) Kelly alleged that, on September 17, 2017, he was injured while working on a construction project at 2795 Richmond Avenue, Staten Island, NY (the "Premises"). (*Id.* at ¶¶ 3,6.)

The construction project "had four phases and was completed over two and a half years." (ECF No. 65-5, LM Exhibit D, Rousell Deposition, at 11:04-11:14.) The project involved "taking over two adjacent spaces on the second floor [of the Premises]," "remov[ing] . . . the escalators connecting the two floors," and filling in "the structural grid."[6] (*Id.* at 11:04-11:14.)

At the time of the alleged incident, Kelly was a painter employed by Black Dog Interiors.[7] (ECF No. 50-1, LM Rule 56.1 Statement, at ¶ 7; ECF No. 50-4, Exhibit 1, Underlying Summons and Complaint, at ¶¶ 23-28.) Black Dog Interiors was a subcontractor

---

[6] Cincinnati "disputes" this fact regarding the location and nature of the project on which Kelly worked, and many others, by asserting that the deposition testimony cited to is "unclear where the accident occurred and if it was part of the alleged Project." (ECF No. 56, Cincinnati Counter to Safety Rule 56.1 at ¶ 2.) The Court has reviewed Exhibit D and concludes that Cincinnati's asserted dispute is not genuine, as the testimony establishes the facts asserted, and no evidence is submitted to dispute those facts. *See Major League Baseball Properties*, 542 F.3d at 312, 314. Kelly testified at his deposition in the underlying action that he was employed by Black Dog Interiors at the time of the incident and that he was working on the Premises at the time of the incident, and his deposition testimony was submitted as an exhibit in the instant action. (ECF No. 65-2 at 10:17-11:03.) Cincinnati offers no specific record evidence that creates a genuine issue of fact as to whether Kelly was working on the Premises when the incident happened, nor does Cincinnati assert that Kelly's deposition testimony is inadmissible. *See* Fed. R. Civ. P. 56.

[7] Cincinnati asserts that there is a genuine dispute of material fact whether Kelly *alleges* that he was employed by Black Dog Interiors, as the "material cited" by LM in support of this assertion "does not support" such a statement. (ECF No. 55, Cincinnati Counter to LM Rule 56.1 at ¶ 6.) The Court has reviewed the relevant cited evidence, and concludes that Cincinnati's asserted dispute is not genuine, as the cited exhibit establishes that Kelly alleged in the underlying action that he was employed by Black Dog Interiors, within three paragraphs of the cite provided by LM. *See Major League Baseball Properties*, 542 F.3d at 312, 314. Additionally, despite Cincinnati's assertion to the contrary, this Court concludes that there is no genuine dispute of material fact as to whether Kelly was *employed* by Black Dog Interiors at the time of his alleged injuries: Kelly testified in a deposition in the underlying action that he was employed by Black Dog Interiors at the time of the incident, and the deposition testimony was submitted as an exhibit in the instant action, and is not disputed. (ECF No. 65-2 at 10:17-11:03.)

of Einstein, the construction company working on the construction project at the Premises.  (ECF No. 65-3, Exhibit B, Warren Deposition at 15:08-15:17.)  The incident allegedly occurred when Kelly was standing on a scaffold to paint a ceiling; he fell when the scaffold platform fell through to the floor. (ECF No. 65-2, Exhibit A, Underlying Kelly Deposition, at 24:03-26:16.)  The scaffold was already set up when Kelly arrived at the Premises on the day of the incident.  (*Id.* at 19:15-19:18.)

In the underlying action, Kelly alleged that Pergament and Raymours were liable for his injury "by and through their agents, servants and/or employees, in the ownership, operation control, care, custody, charge, supervision and management of said premises."[8]  (*Id.* at ¶¶ 3-4.)  On September 27, 2021, Pergament impleaded Einstein into the underlying action, alleging that Einstein was responsible for any alleged liability in the underlying action, and seeking indemnification and judgment against Einstein.  (ECF No. 56, Cincinnati Counter to LM Rule 56.1 Statement at ¶ 2.)

**B. The Pergament-Raymours Lease and Associated Insurance Policies**
    **1.   The Pergament-Raymours Lease**

---

[8] Kelly also alleged that a third company, Raymours & Flanigan Properties LLC, co-owned the Premises.  (ECF No. 50-4 at ¶ 18.)  It is undisputed that Raymour & Flanigan is a shell LLC.  (ECF No. 61-2, LM Counter to Cincinnati Rule 56.1 at ¶ 28; ECF No. 58, Safety Counter to Cincinnati Rule 56.1 at ¶ 28.)

Pergament is the current owner of the Premises. (ECF No. 56, Cincinnati Counter to LM Rule 56.1 Statement at ¶ 12.) In 2003, Pergament's predecessor-in-interest, MRP Family Holdings LLC, leased the Premises to Raymours's predecessor-in-interest, Levitz Furniture, LLC. (ECF No. 50-18, Exhibit 15, Lease Agreement at 2.) In 2004, MRP Family Holdings LLC and Levitz Furniture LLC signed a first amendment to the lease; in 2015, Pergament and Raymours signed a second amendment to the lease; and in May 2017, Pergament and Raymours signed a third amendment to the lease.[9] (*Id.* at 112-152.)

Pursuant to the terms of the lease, Raymours agreed to "obtain comprehensive public liability insurance on an occurrence basis in respect of the Premises and the conduct and operation of business therein, with limits of liability of not less than Three Million Dollars ($3,000,000) for injury or death to any one person." (ECF No. 55, Cincinnati Counter to LM Rule 56.1 at ¶ 17.) Of significance to the instant action, the lease required that "Tenant . . . name as additional insureds Landlord."[10] (*Id.* at ¶ 18; ECF No. 50-18 at 26.) In other words, the lease required Raymours to obtain and maintain general liability insurance and to include

---

[9] Pergament and Raymours signed a fourth amendment to the lease in 2020. (ECF No. 50-18, Exhibit 15, Lease Agreement at 161.)

[10] The lease defined "Tenant" as Raymours and "Landlord" as Pergament. (ECF No. 55, Cincinnati Counter to LM Rule 56.1 at ¶¶ 19-20.)

Pergament as an additional insured party for any such insurance. (ECF No. 55, Cincinnati Counter to LM Rule 56.1 at ¶ 21.)

### 2.  LM Insurance Policy: Pergament

On July 25, 2017, LM Insurance issued an insurance policy (the "LM Insurance Policy") that identified Pergament as a "Named Insured." (ECF No. 50-7 at 2-3.) The policy period was from June 30, 2017 to June 30, 2018. (*Id.*) The LM Insurance Policy has an "Other Insurance" section that provides, in part, as follows:

> b. Excess Insurance
>
> (1)  This insurance is excess over:
>
> . . .
>
> (b)  Any other primary insurance available to [Pergament] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [Pergament has] been added as an additional insured.

(ECF No. 55, Cincinnati Counter to LM Rule 56.1 at ¶ 75; ECF No. 50-7 at 5.)

### 3.  Safety Insurance Policy: Raymours

In April 2017, Safety issued a commercial general liability insurance policy (the "Safety Insurance Policy") to Raymours, with a policy period from April 1, 2017 to April 1, 2018, in which Raymours is identified as a Named Insured. (ECF No. 55, Cincinnati Counter to LM Rule 56.1 at ¶ 44; ECF No. 50-13.) The Safety National Policy contains an "Other Insurance" clause as follows:

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover . . . our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. . . .

**b. Excess Insurance**

**(1)** This insurance is excess over:

. . .

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(ECF No. 50-13 at 11-12.)

**C. The Raymours-Einstein Contract and Associated Insurance Policies**

**1.   The 2017 Raymours-Einstein Contract**

On April 3, 2017, Raymours signed a contract with Einstein regarding a construction project, titled "Staten Island Showroom Remodel," at the Premises.  (ECF No. 55, Cincinnati Counter to LM Rule 56.1 at ¶ 22; ECF No. 50-14 at 2.)  In the 2017 Raymours-Einstein Contract, Raymours is referred to as "Owner" and Einstein is referred to as "Contractor."  (ECF No. 50-14 at 2.)  The 2017 Raymours-Einstein Contract includes, in relevant part, as follows:

ARTICLE 8 INSURANCE REQUIREMENTS

14

8.0 Contractor shall carry insurance . . . and shall furnish to Owner a certificate of Insurance in complete compliance with Owner requirements . . . (in compliance with the sample insurance certificates and endorsements attached hereto as Exhibit 4) . . . **The Certificate of Insurance must be accompanied by the additional insured and waiver of subrogation endorsement forms in form attached hereto as Exhibit 4**. . . . In connection with each Purchase Order, (i) Owner, (ii) Raymours Furniture Company, Inc., (iii) Lender, and (iv) any other party requested by Owner (collectively, "Additional Insureds") must be named as additional named insured on all policies of insurance.

. . .

8.2 **The conditions set in the sample Certificate of Liability Insurance attached hereto as Exhibit 4, shall be met** including, but not limited to, the type and limit of coverage.

. . .

8.4 The insurance shall conform to the minimum coverage described below[:]

. . .

(b) Commercial General Liability including coverage for Premises-Operations . . . Personal Injury, and Broad Form Property Damages . . .

(d) Required Endorsement Forms:
 i. **CG 20 10 04 13 ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION**

. . .

8.5 The language . . . added by Endorsement/Special Provisions shall be:

Re: Contracted Services, **[Additional Insureds] are named as additional insured with respects[sic] to work performed by the Insured.  This insurance is primary and noncontributory over all other**

15

> **collectible insurances inclusive of Umbrella Liability Coverages and limits.** A Waiver of Subrogation endorsement in favor of named additional insured is included.

(*Id.* at 6-7 (emphasis added).)

The 2017 Raymours-Einstein Contract includes, as the referenced "Exhibit 4," a sample Certificate of Insurance. (*Id.* at 33; ECF No. 65-3 at 38:08-38:25; 39:22-40:07.) The sample Certificate of Insurance provides as follows:

> Re: Contracted Services, 2795 Richmond Ave., Staten Island, NY. **Raymours Furniture Co., Inc. and Pergament Mall of SI, LLC are named as additional insured with respects[sic] to work performed by Insured. This insurance is primary and noncontributory over all other collectible insurances** inclusive of Umbrella Liability Coverages and limits.

(ECF No. 50-14 at 33.) Additionally, the 2017 Raymours-Einstein Contract contains an attached sample endorsement titled, "Additional Insured – Owners, Lessee or Contractors – Scheduled Person or Organization," Form No. CG 20 10 04 13. (*Id.* at 34.) The endorsement lists Raymours and Pergament under the heading "Name of Additional insured Person(s) Or Organization(s)," and lists the Premises under the heading "Location(s) of Covered Operations." (*Id.*)

Finally, the 2017 Raymours-Einstein Contract provides the following regarding indemnification:

> 7.1 To the fullest extent permitted by law Contractor shall protect, defend, indemnify and save harmless Owner, Owner's affiliates and subsidiaries . . . any tenant of the Property, and their respective directors,

16

officers, members, managers, partners, agents and employees (collectively, the "Indemnified Parties") from and against any and all losses, costs, claims, damages, penalties, liabilities, awards, judgments and expenses, including reasonable attorneys' fees and expenses arising, in whole or in part, from (i) any Contractor Party's breach of this Agreement or failure to follow the Contract Documents, or the directives of Owner or its authorized agents; (ii) intentional or negligent act or omission of any Contractor Party; or (iii) any Contractor Party's failure to comply with the requirements of any applicable federal, state or local laws, rules, regulations and orders (including, without limitation, those of the Occupational Safety and Health Act, as amended); notwithstanding the fact that any Indemnified Party may have been negligent. As used herein, a "Contractor Party" shall mean any of the following: Contractor or Contractor's employees, agents, subcontractors (or their employees, agents or subcontractors), suppliers, anyone directly or indirectly employed by any of them or anyone whose acts any of them are or may be liable.

(*Id.* at 5.)

### 2.   The 2016 Raymours-Einstein Contract

There were earlier contracts between Raymours and Einstein regarding the construction project at the Premises, including a contract signed in 2016.[11] (ECF No. 55, Cincinnati Counter to LM

---

[11] Cincinnati "disputes" this fact by asserting that "the evidence does not establish a true, accurate, and complete 2016 contract" and that the "complaint, Initial Disclosures, and Interrogatories . . . made no allegations of a 2016 contract and no proper discovery . . . [was] had regarding a purported 2016 contract." (ECF No. 55, Cincinnati Counter to LM Rule 56.1 at ¶ 24.) The Court concludes that the dispute is not genuine. *Major League Baseball Properties*, 542 F.3d at 312, 314. Jennifer Warren, president and co-owner of Einstein since 2008, testified at her deposition that her responsibilities at the company include to "sign the contracts, [and] subcontracts," and to "mak[e] sure that Einstein complies with [insurance] requirements." (ECF No. 65-3 at 8:07-8:16, 9:16-9:23.) Warren further testified that there were at least three written contracts between Einstein and Raymours on the Premises, including one signed in 2016. (*Id.* at 61:11-61:25.) Under Federal Rule of Civil Procedure 56, a party may support an undisputed fact by citing to deposition testimony. Fed. R. Civ. P. 56(c)(1)(A). Cincinnati has not submitted evidence in the record contradicting Warren's statements, nor argued that the deposition testimony is

Rule 56.1 at ¶ 24; ECF No. 65-3 at 61:17-62:23.)  The 2016 contract had the same insurance requirements as the 2017 Raymours-Einstein Contract, including the same requirements regarding additional insureds.[12]  (ECF No. 65-3 at 64:07-64:23, 65:08-65:13.)

### 3.   Cincinnati Insurance Policy

Cincinnati issued an insurance policy (the "Cincinnati Insurance Policy") that identified Einstein as a "Named Insured." (ECF No. 50-12 at 2.)  The policy period was from June 27, 2015 to June 27, 2018.  (*Id.*)  The Cincinnati Insurance Policy has an endorsement titled "New York Changes – Commercial General Liability Coverage Form" that provides as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. . . .

(*Id.* at 16.)

In a second endorsement titled "New York Contractors' Commercial General Liability Broadened Endorsement," the Cincinnati Insurance Policy provides as follows:

9.   Automatic   Additional   Insured   –   Specified Relationships

---

inadmissible.  Thus, the Court may consider the earlier 2016 construction contract between Raymours and Einstein.

[12] Cincinnati also "disputes" this fact.  For the reasons stated in footnote 11, the Court concludes that the asserted factual dispute is not genuine.  *Major League Baseball Properties*, 542 F.3d at 312, 314.

a. The following is hereby added to SECTION II - WHO IS AN INSURED:

(1) **Any person or organization described in Paragraph 9.a.(2) below (hereinafter referred to as additional insured)** whom you are required to add as an additional insured under this Coverage Part by reason of:

(a) **A written contract or agreement**; or

(b) An oral agreement or **contract where a certificate of insurance showing that person or organization as an additional insured has been issued,**

is an insured, provided

(a) The written or oral contract or agreement is:

1) Currently in effect or becomes effective during the policy period; and

2) Executed prior to an 'occurrence' or offense to which this insurance would apply; and

(b) They are not specifically named as a additional insured under any other provision of, or endorsement added to, this Coverage Part.

(*Id.* at 11 (emphasis added).) Paragraph 9.a.(2) of the Cincinnati

Insurance Policy provides as follows:

(2) **Only the following persons or organizations are additional insureds under this endorsement,** and insurance coverage provided to such additional insureds is limited as provided herein:

. . .

(f) **Any person or organization with which you have agreed per Paragraph 9.a.(1) above to provide insurance,** but only with respect to liability

19

> arising out of "your work" performed for that
> additional insured by you or on your behalf.

(*Id.* at 11.) "Your work," or Einstein's work, is defined under the

Cincinnati Insurance Policy as "[w]ork or operations performed by

[Einstein] or on [Einstein's] behalf; and . . . [m]aterials, parts

or equipment furnished in connection with such work operations."

(*Id.* at 9.)

Additionally, the endorsement titled "New York Contractors'

Commercial General Liability Broadened Endorsement" contains the

following provision:

> **Where required by a written contract or agreement, this
> insurance is primary and/or noncontributory as
> respects[sic] any other insurance policy issued to the
> additional insured,** and such other insurance policy
> shall be excess and/or noncontributing, whichever
> applies, with this insurance.

(*Id.* at 13.)

### D. Absence of Black Dog Interiors-Einstein Contract

There was no written contract between Black Dog Interiors and

Einstein regarding Black Dog Interior's work at the Premises.  (ECF

No. 56, Cincinnati Opposition to Safety Rule 56.1, at ¶ 11.)

### E. Communications Between the Parties

In a letter dated May 8, 2018, and via subsequent emails dated

July 12, 2018, August 10, 2018, August 19, 2018, August 28, 2018,

September 28, 2018, December 12, 2018, December 31, 2018, January

22, 2019, February 11, 2019, March 5, 2019, April 3, 2019, May 8,

2019, November 11, 2019, November 12, 2019, and May 6, 2020, LM

20

tendered to Safety the defense and indemnity of Pergament in the underlying action.  (ECF No. 50-8.)  LM again tendered the defense and indemnity of Pergament in the underlying action to Safety in a letter dated July 31, 2020.  (ECF No. 50-9.)

By letters dated August 3, 2020, August 6, 2020, and October 27, 2020 to Cincinnati, LM tendered the defense and indemnity of Pergament in the underlying action to Cincinnati.  (ECF No. 50-10.)  In a letter dated January 21, 2021, Cincinnati disclaimed coverage for Pergament as an additional insured under the Cincinnati Insurance Policy.  (ECF No. 55, Cincinnati Counter to LM Rule 56.1 at ¶¶ 83, 85.)

On February 5, 2018, counsel for Raymours in the underlying action sent a letter to Cincinnati tendering the defense of Raymours in the underlying action to Cincinnati, as the insurer for Einstein.  (ECF No. 56, Cincinnati Opposition to Safety Rule 56.1 at ¶ 46.)  Cincinnati sent a letter to Raymours's counsel dated February 16, 2018, acknowledging the tender and stating that it was initiating an investigation.  (*Id.* at ¶ 47.)  Cincinnati sent letters to Raymours's counsel dated July 10, 2018, August 7, 2018, and September 6, 2018, stating that Cincinnati was continuing its investigation and requesting information from Raymours.  (*Id.* at ¶ 48-49.)  On January 27, 2022, Cincinnati accepted Raymours's tender of a duty to defend, but rejected tender of Raymour & Flanigan Properties, LLC.  (ECF No. 48-11, at 1.)  In the January

27, 2022 letter to Raymours's counsel, Cincinnati stated that Safety, Raymours's insurer, "has refused to accept Cincinnati's acceptance of tender" for Raymours. (*Id.*)  In a response letter dated February 24, 2022, Raymours's counsel stated that "any acceptance of tender which does not also protect Raymours from cross claims asserted by its Landlord, Pergament, is wholly insufficient," and that an "insufficient tender acceptance which continues to leave the additional insured exposed need not be accepted." (ECF No. 48-12 at 1.)

## II.  **Procedural History**

On April 2, 2021, LM filed the instant complaint. (ECF No. 1, Complaint.)  On June 11, 2021, Cincinnati answered LM's complaint. (ECF No. 16, Answer.)  On July 28, 2021, Safety filed an amended answer to LM's complaint and amended crossclaims against Cincinnati. (ECF No. 23.)  On August 16, 2021, Cincinnati answered Safety's amended crossclaims, and then filed an amended answer to Safety's amended crossclaims on September 2, 2021. (ECF Nos. 24, 25.)  On October 25, 2022, LM, Safety, and Cincinnati filed complete briefing regarding each party's motion for summary judgment. (ECF Nos. 77-87.)

## LEGAL STANDARD

Summary judgment is appropriate when a movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).  "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In deciding the motion, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

When bringing a motion for summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as a matter of law. *Rojas*, 660 F.3d at 104.  The movant must point to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  It may also indicate the absence of a factual dispute by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  Put another way, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Once the moving party has met its burden, the nonmoving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 322-23). The non-movant cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted); *see also D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." (citation omitted)). In deciding a motion for summary judgment, the Court is not to weigh evidence, assess the credibility of witnesses, or resolve issues of fact. *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994) (citations omitted).

## DISCUSSION

### I.   Authentication of the 2017 Raymours-Einstein Contract

The Court first addresses a significant dispute between the parties regarding record evidence submitted in support of the parties' motions for summary judgment. Cincinnati contends that the record contains no authenticated contract between Einstein and Raymours, as "no witness was able to verify a true, accurate, and

complete original (or copy) of any Einstein-Raymours[] Contract,"
including the 2017 Raymours-Einstein contract on which LM and
Safety primarily rely in their respective motions.  (ECF No. 80,
Cincinnati Opposition to LM Motion at 3.)  Cincinnati specifically
relies on deposition testimony by Lawrence Rousell, Raymours's
senior vice president of real estate and construction, who
testified that he could not determine whether the sample insurance
endorsements and the sample certificate of insurance attached to
the purported 2017 Raymours-Einstein contract were part of the
final signed contract submitted as record evidence.  (ECF No. 78-
1, Cincinnati Mem. at 4.)

LM asserts that Jennifer Warren, president and co-owner of
Einstein, separately authenticated the 2017 Raymours-Einstein
Contract in her deposition testimony, and also points to Rousell's
affidavit, in which he authenticated the contract.  (ECF No. 86,
LM Reply to Cincinnati Opposition at 1.)  Safety contends that
Rousell identified the 2017 Raymours-Einstein Contract in his
deposition, even if not the attached sample endorsements, and that
he authenticated the endorsements and the contract as a whole in
his affidavit.  (ECF No. 77-1, Safety Mem. at 9.)

Cincinnati counters that Rousell's affidavit was untimely,
explicitly contradicts his deposition testimony, and constitutes
"a sham issue of fact," and insinuates that Rousell lied in his
affidavit, based on an email exchange between Warren and Raymours's

defense counsel in the underlying action.  (ECF No. 81, Cincinnati Opposition to Safety Motion at 9-10.)   Safety objects that Cincinnati filed the relevant emails as an exhibit on September 2, 2022, the day that moving papers were to be served on the opposing parties and seven months after discovery closed.  (ECF No. 44, Memorandum and Order noting February 4, 2022 discovery deadline; 07/19/2022 Scheduling Order; ECF No. 75, Redaction of Email Related to Sham Issue of Fact.)

Under Federal Rule of Evidence 901, "authentication . . . is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001) (quoting Fed. R. Evid. 901(a) (alterations omitted)).  The Second Circuit has advised that "the bar for authentication of evidence is not particularly high," and that it "depends on a context-specific determination whether the proof advanced is sufficient to support a finding that the item in question is what its proponent claims it to be." *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014) (alterations, internal quotation marks, citations omitted). Examples of means of authentication under Rule 901 include "[t]estimony of a witness with knowledge . . . that an item is what it is claimed to be" and a document's "appearance, contents, substance, internal patterns, or other distinctive characteristics

of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(1), (4).

Here, Warren, the president and co-owner of Einstein since 2008, testified at her deposition that her responsibilities at Einstein include to "sign the contracts, [and] subcontracts," and to "mak[e] sure that Einstein complies with [insurance] requirements." (ECF No. 65-3 at 8:07-8:16, 9:16-9:23.) Warren testified that the signed copy of the 2017 Raymours-Einstein Contract, presented to her at her deposition and submitted as Exhibit 11 as evidence in support of LM's motion, "reflect[ed] the contract between Raymours and Einstein for purposes of the work that was ongoing when . . . Kelly allegedly had his accident[.]" (*Id.* at 36:20-36:24.) She testified that Article 8 of the signed contract included the following statement:

> Contractor shall carry insurance in accordance with the requirements of Article 3 and shall furnish to owner a certificate of insurance in complete compliance with owner requirements prior to entering the property site to commencing any work, *in compliance with the sample insurance certificates and endorsements attached hereto.*

(*Id.* at 38:08-38:17 (emphasis added).) Article 8 of the signed contract includes the language, "the sample insurance certificates and endorsements attached hereto *as Exhibit 4*." (ECF No. 50-14 at 6 (emphasis added).) Warren testified that "the reference to Exhibit 4" meant "[i]nsurance exhibits, the sample insurance forms." (ECF No. 65-2 at 39:22-40:07.)

27

Warren further testified that there were separate written contracts between Raymours and Einstein for different phases of the construction project, but that each contract "contain[ed] [the] Article 8 insurance requirements section," including "the requirement that Einstein furnish[] the owner with a certificate of insurance, complying with the sample insurance certificates and endorsements attached." (*Id.* at 40:18-41:15.) She also testified that it was "the regular course of business between Einstein and Raymours with respect to the insurance for the work Einstein was doing" at the Premises "to have insurance submitted . . . listing Raymours and Pergament . . . as additional insureds." (*Id.* at 42:07-42:16.)

Finally, Warren testified that any work that was done on the Premises "[s]hould have been" done pursuant to the 2017 Raymours-Einstein Contract that she had testified to, but that the 2016 written contract between Raymours and Einstein had the same insurance requirements as the 2017 Raymours-Einstein Contract, including requiring Einstein to add Pergament and Raymours as additional insureds.[13] (*Id.* at 62:17-63:02; 64:12-64:23.)

---

[13] Warren's testimony at times refers to Raymours, and at other times to Raymour & Flanigan, as the subject of the additional insureds requirements. (*See, e.g.*, ECF No. 42:07-42:16, 64:19-64:23.) As it is not disputed that Raymour & Flanigan is a shell LLC, the Court finds that Warren's testimony regarding Raymour & Flanigan may be considered to apply to Raymours. (*See* ECF No. 61-2, LM Counter to Cincinnati Rule 56.1 at ¶ 28; ECF No. 58, Safety Counter to Cincinnati Rule 56.1 at ¶ 28.)

The Court finds that, in this context, Warren's testimony suffices to meet the "not particularly high" bar for authentication of the 2017 Raymours-Einstein Contract, including the attached sample endorsements. *Vayner*, 769 F.3d at 130. In her role as Einstein president and co-owner, Warren had personal knowledge of the contracts involving her company because she regularly reviewed contracts and was responsible for understanding the insurance requirements of Einstein's contracts. Based on Warren's personal knowledge, she testified that the document that LM asserted was the 2017 signed contract between the parties was "what it [was] claimed to be," Fed. R. Evid. 901, and that the sample insurance endorsements were part of the signed contract. Further, the Court has considered the document's "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item." Fed. R. Evid. 901(b)(4). "[T]aken together with all the circumstances," *id.*, the Court finds that "sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity." *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999) (internal quotation marks and citations omitted.)

Cincinnati argues that Warren testified that she did not attend the signing of the final contract, and thus cannot speak to the contents of the final signed contract. (ECF No. 84, Cincinnati Reply to LM Opposition at 3.) But the "burden of authentication does not require the proponent of the evidence to rule out all

possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Pluta*, 176 F.3d at 49 (internal quotation marks and citation omitted). The standard is "reasonable likelihood," and the Court determines that Warren's testimony, combined with the distinctive characteristics of the documents, meet that standard. *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007); *see United States v. Tin Yat Chin*, 371 F.3d 31, 37–38 (2d Cir. 2004) (affirming admission of credit card receipt copies despite uncertainty about who signed the receipts and when); *see also United States v. Maxwell*, No. 20-CR-330 (AJN), 2021 WL 5868120, at *2 (S.D.N.Y. Dec. 9, 2021) ("[A] document may be admitted under 901(b)(4) even when no witness saw the creation of the document or the particular copy admitted at trial.").

Finally, the Court notes although Cincinnati insinuates that Rousell misrepresented facts in his affidavit, Cincinnati does not explicitly argue that the Court should find that the affidavit was false or submitted by Safety in bad faith, pursuant to Federal Rule of Civil Procedure 56(h), and thus that Safety should be held in contempt or subjected to sanctions. (*See* ECF No. 81, Cincinnati Opposition to Safety Rule 56.1, at 9-10.) As the Court finds that the 2017 Raymours-Einstein Contract was sufficiently authenticated without Rousell's affidavit, the Court declines to address the

issue of the veracity of Rousell's affidavit.  Moreover, it would be improper for the Court to do so.

## II.  Duty to Defend

Under New York law, "the duty of an insurer to defend its insured is 'exceedingly broad.'"  *High Point Design, LLC v. L.M. Ins. Corp.*, 911 F.3d 89, 94 (2d Cir. 2018) (quoting *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648 (N.Y. 1993)).  "[A]n insurer has a duty to defend when there is a possibility that it 'might eventually be . . . obligated to indemnify the insured under any provision of the insurance policy.'"  *N. River Ins. Co. v. Leifer*, No. 22-1009, 2023 WL 2978970, at *1 (2d Cir. Apr. 18, 2023) (quoting *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82 (2d Cir. 2013)).

Whether an insurer has a duty to defend "turns on (1) the scope of the coverage it has agreed to provide; and (2) whether the complaint or the facts available to the insurer create a possible factual or legal basis on which the duty to defend may attach."  *Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*, 547 F. Supp. 3d 381, 394 (S.D.N.Y.), *opinion corrected on other grounds*, 556 F. Supp. 3d 301 (S.D.N.Y. 2021).  "An insurer's duty to defend . . . is ordinarily ascertained by comparing the allegations of a complaint with the wording of the insurance contract."  *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004) (citations omitted). "While the New York Court of Appeals

31

has eschewed wooden application of the four corners of the complaint rule . . . [any] extrinsic evidence relied upon may not overlap with the facts at issue in the underlying case." *Travelers Indem. Co. v. Harleysville Ins. Co.*, No. 21-CV-1089 (MKB), 2023 WL 6050116, at *8 (E.D.N.Y. Sept. 14, 2023) (alterations, internal quotation marks, and citation omitted) (collecting cases); *see also Great Am. Ins. Co. v. AIG Specialty Ins. Co.*, No. 21-CV-1298, 2022 WL 17587851, at *1 (2d Cir. Dec. 13, 2022) (summary order) ("[A]n insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage." (internal quotation marks and citation omitted)); *but see Napoli v. Nat'l. Sur. Corp.*, No. 22-CV-1516, 2023 WL 2320332, at *2 (2d Cir. Mar. 2, 2023) (summary order) ("The duty to defend cannot be established through a 'strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable.'" (quoting *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82 (2d Cir. 2006)).

### A. Safety's Duty to Defend Pergament

LM settled its claims against Safety and withdraws its motion as to Safety. (ECF No. 86, LM Reply Brief at 1 n.2.) Accordingly, this Court need not determine Safety's duty to defend Pergament in the underlying action.

### B. Cincinnati's Duty to Defend Raymours and Pergament

Here, Kelly named Pergament and Raymours as defendants in the underlying action, but did not name Einstein, Cincinnati's named insured, as a defendant. (ECF No. 50-4, Underlying Summons and Complaint at ¶¶ 3-11.) The Court's inquiry, however, does not end there, as the duty to defend "applies equally to additional insureds and named insureds." *Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 15 N.Y.3d 34, 37 (N.Y. 2010) (citation omitted); *see also Liberty Mut. Ins. Corp. v. New York Marine & Gen. Ins. Co.*, 505 F. Supp. 3d 260, 270 (S.D.N.Y. 2020), *reconsidered on other grounds*, 590 F. Supp. 3d 597 (S.D.N.Y. 2022) ("[T]he standard for determining whether an additional named insured is entitled to a defense is the same standard that is used to determine if a named insured is entitled to a defense." (citing *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 715 (2007))).

Kelly's underlying state court complaint in the state court action alleges that (1) Pergament hired Black Dog Interiors to perform manual labor in construction and renovation at the Premises; (2) Raymours supervised the construction and renovation; (3) Kelly was an employee of Black Dog; (4) Kelly was "caused to trip and fall"; (5) his fall was "due to the negligence of Defendants, by and through their agents, servants, and/or employees, in the ownership, operation control, care, custody . . . and management of [the Premises]" in "causing, creating,

permitting and/or allowing a dangerous, hazardous, defective unlawful condition" to exist on the Premises.  (ECF No. 50-4, Underlying Summons and Complaint, at ¶¶ 12, 20-22, 25-27, 32, 34.) Accordingly, if Pergament or Raymours are additional insureds within the scope of Cincinnati's policy, the complaint establishes "a possible factual or legal basis on which the duty to defend may attach." *Zurich Am. Ins. Co.*, 547 F. Supp. 3d at 394.

### 1. Raymours

In its opposition to Safety's motion for summary judgment, Cincinnati concedes that Raymours is an additional insured under the Cincinnati Insurance Policy.  (ECF No. 81, Cincinnati Opposition to Safety Motion, at 2, n.2.)  Cincinnati, however, argues that because it accepted tender on behalf of Raymours, and then Raymours rejected Cincinnati's tender, Raymours has "waived its rights to reimbursement for past defense cost." (ECF No. 81, Cincinnati Opposition to Safety Motion at 2.)  Therefore, Cincinnati argues, without citation to any case law, that Safety's motion for summary judgment regarding Cincinnati's duty to defend Raymours and requested past defense costs is moot.  (*Id.*)  In reply, Safety contends that Raymours's response to Cincinnati's January 27, 2022 acceptance does not constitute waiver, as Cincinnati accepted tender regarding a duty to defend but refused its duty to indemnify or defend Pergament.  (ECF No. 87, Safety Reply to Cincinnati Opposition, at 6-7.)  Additionally, Safety

34

submits a supplemental exhibit consisting of a letter, dated September 2, 2022, sent by Cincinnati to Raymours's counsel, disclaiming Cincinnati's duty to defend Raymours in the underlying action based on Raymours's late notice to Cincinnati of Cincinnati's obligations.  (ECF No. 87-1, Supplemental, at 4-6.)

The Court first notes that the supplemental letter, sent from Cincinnati to Raymours's counsel on the day that motion papers were due to be served on opposing counsel in the instant action, appears to be an attempt to circumvent the bounds of the instant action, regarding issues currently in contention before the Court on the cross-motions for summary judgment, e.g., whether Cincinnati has a duty to defend Raymours in the underlying action. Further, the Court notes that Cincinnati does not raise the issue of late notice in its opposition to Safety's motion for summary judgment, despite opposition papers being due *after* the supplemental letter was sent to Raymours counsel on September 2, 2022.[14]  (ECF No. 81 at 1; ECF No. 87-1, at 4-6; 09/26/2022 Order ("Opposition papers shall be served by October 7, 2022.").)

---

[14] The Court also notes that the issue of late notice extends both to the requirement to tender coverage *and* to an insurer who disclaims coverage, which must be done "from the time that the insurer has sufficient information to disclaim coverage in good faith," and that any investigation must be "prompt, thorough, and diligent." *Berkley Ins. Co. v. Prime Ins. Co.*, No. 20-CV-2249 (RML), 2023 WL 4595513 (E.D.N.Y. July 18, 2023) (citation omitted).  Here, counsel for Raymours in the underlying action tendered the defense of Raymours to Cincinnati on February 5, 2018, less than two months after Kelly filed the underlying action. (ECF No. 56, Cincinnati Opposition to Safety Rule 56.1 at ¶ 46; ECF No. 50-4, Underlying Summons and Complaint.)  Cincinnati, however, did not accept or reject coverage until January 27, 2022, nearly *four years* after being notified of a duty to defend.  (ECF No. 48-11 at 1.)

Therefore, the Court declines to find that the issue of Cincinnati's duty to defend is moot. Cincinnati cites no case law in support of its contention. Though Cincinnati is correct that "as a general rule, the settlement of a dispute usually renders a case moot," the issue of Cincinnati's duty to defend Raymours clearly remains unsettled. *See Yonkers Contracting Co. v. Gen. Star Nat. Ins. Co.*, 14 F. Supp. 2d 365, 372 (S.D.N.Y. 1998) (declining to find moot an insurance coverage dispute where the underlying claim settled). Indeed, Cincinnati continues to contest whether it owes a duty to defend to Raymours.

Additionally, the Court declines to find that Raymours's February 24, 2022 letter, stating that "any acceptance of tender which does not also protect Raymours from cross claims asserted by its Landlord, Pergament, is wholly insufficient," constitutes waiver of Cincinnati's acceptance of tender. (ECF No. 48-12 at 1.) "Under New York law, waiver is a voluntary and intentional relinquishment of a known right." *Phoenix Ins. Co. v. Hudson Excess Ins. Co.*, No. 21-CV-4474 (JPC), 2023 WL 5048629, at *14 (S.D.N.Y. Aug. 8, 2023) (alterations and citation omitted). Waiver must be "clear, unequivocal and deliberate," and "should not be lightly presumed." *Id.* (alterations, internal quotation marks, and citations omitted). In similar circumstances, a district court in the Southern District of New York found that a rejection of acceptance of tender does not "constitute[] an intentional

relinquishment of rights" where the insurer agreed only to tender the defense of one insured and not an additional insured, particularly where the insured followed up to request coverage of the additional insured. *Id.* Raymours — and Safety, as its insurer — have consistently argued that Cincinnati has a duty to defend Pergament as an additional insured, due to the language of the Cincinnati Insurance Policy and relevant contracts between the insureds. Accordingly, the Court declines to find that Raymours's letter describing Cincinnati's acceptance of tender as "wholly insufficient" constitutes waiver of Cincinnati's acceptance such that Safety is now precluded from asserting Cincinnati's duty to defend Safety's insured, Raymours, on summary judgment.

On the merits of Safety's claim for a declaratory judgment that Cincinnati owes Raymours a duty to defend, Cincinnati concedes that Raymours is an additional insured under the Cincinnati Insurance Policy. (ECF No. 81 at 3 n.2.) The duty to defend "applies equally to additional insureds and named insureds." *Regal Constr. Corp.*, 15 N.Y.3d at 37. The Cincinnati Insurance Policy was in effect on the date of the alleged incident. (ECF No. 50-12 at 2; ECF No. 55, Cincinnati Counter to LM Rule 56.1 Statement at ¶¶ 3,6.) And the Cincinnati Insurance Policy states that Cincinnati will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies" and that it "will have the right and

duty to defend the insured against any 'suit' seeking those damages . . . ." (ECF No. 50-12 at 16.) Therefore, the Court determines that Cincinnati has a duty to defend Raymours in the underlying action.

Accordingly, the Court grants Safety's motion for summary judgment for a declaratory judgment that Cincinnati owes Raymours a duty to defend, and denies Cincinnati's motion for summary judgment as to Safety's crossclaim.

### 2. Pergament

All parties agree that Pergament is not explicitly named as an additional insured in the Cincinnati Insurance Policy. (*See* ECF No. 77-1, Safety Mem. at 11; ECF No. 79-1, LM Mem. at 22; ECF No. 80, Cincinnati Opposition to LM Motion at 1.) All of the parties further agree that, for Pergament to be covered as an additional insured under the Cincinnati Insurance Policy, Pergament must meet the criteria for additional insureds under the Cincinnati Insurance Policy's endorsement titled "New York Contractors' Commercial General Liability Broadened Endorsement." (*See* ECF No. 77-1, Safety Mem. at 11; ECF No. 79-1, LM Mem. at 22; ECF No. 80, Cincinnati Opposition to LM Motion at 1.) Specifically, the parties agree that Cincinnati would be required under the Cincinnati Insurance Policy to consider Pergament as an additional insured if (1) Einstein agreed in a written contract or agreement to include Pergament as an additional insured, and (2)

the underlying action concerns liability arising out of Einstein's work performed for Pergament or work performed on Einstein's behalf for Pergament.  (*See* ECF No. 77-1, Safety Mem. at 11; ECF No. 79-1, LM Mem. at 22; ECF No. 80, Cincinnati Opposition to LM Motion at 1); *see also Kassis v. Ohio Cas. Ins. Co.*, 12 N.Y.3d 595, 599-600 (2009) (noting that "additional insured" is "a recognized term in insurance contracts, and the well-understood meaning of the term is an entity enjoying the *same* protection as the named insured" (citation omitted)).

LM and Safety assert that these two conditions are met; Cincinnati argues that neither of these conditions have been satisfied, and further, Pergament must be shown to be in privity with Einstein, under *Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Mar. Ins. Co.*, 31 N.Y.3d 131, 135 (N.Y. 2018).  (*See* ECF No. 77-1, Safety Mem. at 11-12; ECF No. 79-1, LM Mem. at 22-25; ECF No. 80, Cincinnati Opposition to LM Motion at 1-10.)

### i. Written Contract Condition

Regarding the first condition, the 2017 Raymours-Einstein Contract provides that "[Einstein] shall carry insurance . . . and shall furnish to [Raymours] a certificate of Insurance in complete compliance with [Raymours's] requirements . . . [and] in compliance with the sample insurance certificates and endorsements attached hereto as Exhibit 4[]."  (ECF No. 50-14 at 6.)  It further provides that "[t]he Certificate of Insurance must be accompanied by the

39

additional insured . . . endorsement forms in form attached hereto as Exhibit 4." (*Id.*) The 2017 Raymours-Einstein Contract also provides that "any . . . party requested by [Raymours] . . . must be named as additional named insured on all policies of insurance," and reiterates that "the conditions set in the sample Certificate of Liability Insurance attached hereto as Exhibit 4, shall be met including, but not limited to, the type and limit of coverage." (*Id.*) It provides again that any insurance "shall conform to the minimum coverage described below," which includes subsection (d), "Required Endorsement Forms: CG 20 10 04 13 ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION." (*Id.*) The 2017 Raymours-Einstein Contract also states that "[Additional Insureds] are named as additional insured with respects[sic] to work performed by the Insured." (*Id.* at 6-7.) Accordingly, the 2017 Raymours-Einstein contract covers as additional insureds any party named in the sample forms in Exhibit 4 of the contract.

The 2017 Raymours-Einstein Contract includes, as the referenced "Exhibit 4," a sample Certificate of Insurance. (*Id.* at 33; ECF No. 65-3 at 38:08-38:25; 39:22-40:07.) The sample certificate of insurance provides as follows:

> Raymours Furniture Co., Inc. and Pergament Mall of SI, LLC are named as additional insured with respects to work performed by Insured.

(ECF No. 50-14 at 33.)  Additionally, as noted above, the 2017 Raymours-Einstein Contract contains an attached sample endorsement titled, "Additional Insured – Owners, Lessee or Contractors – Scheduled Person or Organization," Form No. CG 20 10 04 13.  (*Id.* at 34.)  The Form No. CG 20 10 04 13 endorsement lists Raymours and Pergament under the heading "Name of Additional insured Person(s) Or Organization(s)."  (*Id.*)  Accordingly, the 2017 Raymours-Einstein contract constitutes a "written contract" that requires Einstein to name Pergament as an additional insured in Einstein's insurance.

Cincinnati primarily argues that the 2017 written contract was not properly authenticated and therefore cannot meet the "written contract" condition of Cincinnati's Insurance Policy, an argument that this Court has already considered above, and with which the Court disagrees.  (*See* ECF No. 80 at 4-9.)  Cincinnati also contends that LM and Safety have not properly established whether the 2017 or 2016 contract controlled at the time of the alleged incident, and that because there was no discovery concerning a 2016 contract, the 2016 contract cannot be considered. (*Id.* at 5.)  This Court disagrees, noting that Warren testified that at her deposition that there were at least three written contracts between Einstein and Raymours concerning construction at the Premises, including one signed in 2016.  (ECF No. 65-3 at 61:11-61:25.)  Further, Warren testified that the 2016 contract

41

had the same insurance requirements as the 2017 Raymours-Einstein Contract, including the same requirements for establishing coverage for additional insureds. (*Id.* at 64:07-64:23, 65:08-65:13.)

Cincinnati also argues that even if the 2017 Raymours-Einstein Contract was authenticated, the sample certificates of insurance attached to the contract in "Exhibit 4" do not demonstrate that Pergament was an additional insured for purposes of insurance coverage. (ECF No. 80, Cincinnati Opposition to LM Motion, at 9.) Cincinnati contends that certificates of insurance, alone, do not create proof of coverage, citing *Lopez v. Rutgers Cas. Ins. Co.*, 298 F. Supp. 3d 503, 514 (E.D.N.Y. 2018). In *Lopez*, the district court found that certificates of insurance alone did not suffice as proof of policy coverage for additional insureds named on the certificates. (*Id.*) *Lopez*, however, is distinguishable from the instant action. In *Lopez*, the plaintiff asserted that a certificate of insurance named a non-party, #1 Realty, as an additional insured under the defendant's insurance policy. The defendant's insurance policy also contained an endorsement, Form "CG 20 10 03 97," which amended the policy "to include as an [additional] insured the person or organization shown in the Schedule[.]" (*Id.* at 507.) The Schedule, however, was blank — it did not name any additional insureds. (*Id.*)

Here, by contrast, the 2017 Raymours-Einstein Contract incorporates not only a sample certificate of insurance, but also an endorsement, Form No. CG 20 10 04 13. (ECF No. 50-14 at 34.) The endorsement specifically names Pergament under the heading "Name of Additional insured Person(s) Or Organization(s)," unlike *Lopez*'s blank endorsement. (*Id.*) Additionally, *Lopez* involved certificates of insurance allegedly attached to an insurance policy. Here, the certificates of insurance and endorsement forms are attached to the 2017 Raymours-Einstein Contract. As noted above, the Cincinnati Insurance Policy provides for additional insureds where, in part, a written contract or agreement requires them. (ECF No. 50-12 at 11-12.) The certificates of insurance *and* endorsement Form No. CG 20 10 04 13 are part of the 2017 Raymours-Einstein Contract. Thus, based on the undisputed evidence and clear contract language, the first requirement, that Einstein agreed in a written contract to include Pergament as an additional insured, is satisfied.

Finally, Cincinnati argues that the language of the additional insured provision in the Cincinnati Insurance Policy requires, under New York law, privity between Einstein and any additional insured. (ECF No. 78-1, Cincinnati Mem. at 20 (citing *Gilbane*, 31 N.Y.3d at 135).)

"As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and

43

ordinary meaning." *Gilbane*, 31 N.Y.3d at 135 (citation omitted).

"If the agreement on its face is reasonably susceptible of only

one meaning, a court is not free to alter the contract to reflect

its personal notions of fairness and equity." *White v. Cont'l*

*Cas. Co.*, 9 N.Y.3d 264, 267 (N.Y. 2007) (citation omitted). "If

the terms of a policy are ambiguous, however, any ambiguity must

be construed in favor of the insured and against the insurer."

*Id.*

In *Gilbane*, the New York Court of Appeals interpreted the

following insurance policy endorsement as requiring privity

between the insured and the additional insureds:

> WHO IS AN INSURED (Section II) is amended to include as
> an insured any person or organization *with whom* you have
> agreed to add as an additional insured by written
> contract but only with respect to liability arising out
> of your operations or premises owned by or rented to
> you.

*Gilbane Bldg. Co.*, 31 N.Y.3d at 135.  The New York Court of Appeals

held that use of the term "with" in the additional insured

endorsement required privity of contract between the insured and

any additional insured because "'with' has a definite meaning in

English," and "the 'with' can only mean that the written contract

must be 'with' the additional insured." *Id.* at 135-36.  The New

York Court of Appeals noted that its decision would "require[]

contracting parties . . . to remove the word 'with' from their

future contracts" if the parties sought an additional insured without privity. *Id.* at 136.

*Gilbane*, however, is distinguishable due to ambiguity in the Cincinnati Insurance Policy's language, which must be construed against the insurer. Paragraph 9.a.(2) of the Cincinnati Insurance Policy states:

> (2)  Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:
>
> . . .
>
> (f)  Any person or organization *with which* you have agreed per Paragraph 9.a.(1) above to provide insurance, but only with respect to liability arising out of "your work" performed for that additional insured by you or on your behalf.

(ECF No. 50-12 at 11 (emphasis added).)  Following *Gilbane*, the phrase "with which" suggests a privity requirement. Unlike in *Gilbane*, however, the phrase "with which" is not followed by the phrase "you have agreed to add as an additional insured by written contract."  Instead, the phrase "with which" in the Cincinnati Insurance Policy is followed by the phrase "you have agreed per Paragraph 9.a.(1) . . . to provide insurance."  (ECF No. 50-12 at 12.)  And Paragraph 9.a.(1) provides as follows:

> 9.  Automatic  Additional  Insured  –  Specified Relationships

    a. The following is hereby added to SECTION II - WHO IS AN INSURED:

        (1) Any person or organization described in Paragraph 9.a.(2) . . . (hereinafter referred to as additional insured) *whom* you are required to add as an additional insured under this Coverage Part by reason of:

            (a) A written contract or agreement[.]

(*Id.* at 11 (emphasis added).) In Paragraph 9.a.(1), the phrase "with" is not used; instead, additional insureds include those "whom" Einstein is required, by written contract, to add as an additional insured. Therefore, unlike the policy in *Gilbane*, Paragraph 9.a.(1) of the Cincinnati Insurance Policy does not require privity between Einstein and Pergament for Pergament to be included as an additional insured. 31 N.Y.3d at 136 (noting that privity would not be required if parties "remove[d] the word 'with' from their . . . contracts").

    Given that Paragraph 9.a.(1) refers to "[a]ny person or organization" described in Paragraph 9.a.(2)" but does not require privity, and that Paragraph 9.a.(2)(f) does require privity but refers *back* to Paragraph 9.a.(1) in describing additional insureds, the Court finds that the Cincinnati Insurance Policy's language is ambiguous regarding the privity requirement, and the ambiguity will be construed in favor of the insured and against the insurer. *See Fed. Ins. Co. v. Int'l Bus. Machines Corp.*, 18 N.Y.3d 642, 646 (N.Y. 2012) ("A reviewing court must decide

46

whether, affording a fair meaning to all of the language employed by the parties in the contract and leaving no provision without force and effect, there is a reasonable basis for a difference of opinion as to the meaning of the policy," and if so, "the language at issue would be deemed to be ambiguous and thus interpreted in favor of the insured" (alterations, internal quotation marks and citations omitted)).

Where an insurance agreement is ambiguous, "extrinsic evidence of the parties' intent may be considered." *Gilbane*, 31 N.Y.3d at 137. As the Court has discussed extensively above, the extrinsic evidence before the Court — including Pergament's lease with Raymours, the 2017 Raymours-Einstein contract, and the additional insured endorsement and sample certificates of insurance included in the 2017 Raymours-Einstein contract — all support a conclusion that the parties intended for Einstein's insurance coverage to include Pergament as an additional insured. Accordingly, the Court finds that Einstein agreed in a written contract or agreement to include Pergament as an additional insured, sufficient to meet the first condition of the Cincinnati Insurance Policy.

### ii. 'Arising Out Of' Provision

The second condition — that the underlying action concerns liability "arising out of" Einstein's work or work performed on Einstein's behalf — also is met. Under New York law, "arising out

47

of" is "ordinarily understood to mean originating from, incident to, or having a connection with," and requires "only that there be *some* causal relationship between the injury and the risk for which coverage is provided." *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 568 (2d Cir. 2011) (quoting *Maroney v. N.Y. Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472 (2005)).  Multiple courts have found that liability "arises out of" work performed by subcontractors, including for property owners removed from the daily subcontracting work.  *See, e.g.*, *Regal Construction*, 15 N.Y.3d at 36-38 (holding that because employee was on a worksite and working for subcontractor when injured, there was sufficient connection between the accident and subcontractor's work to establish that the injury "arose out of" the subcontractor's acts or omissions); *Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co.*, 122 F. Supp. 3d 44, 52-53 (S.D.N.Y. 2015) (finding that property owner was an additional insured where contractor "was responsible for hiring subcontractors for the . . . project" and "[underlying plaintiff] was on the premises as a representative of [subcontractor], a potential subcontractor, in connection with [subcontractor's] bid to work on the project"); *622 Third Ave. Co., L.L.C. v. Nat'l Fire Ins. Co. of Hartford*, No. 21-CV-6050 (KPF), 2022 WL 17736796, at *8 (S.D.N.Y. Dec. 16, 2022) (finding, based on allegations in underlying complaint, that property owner was additional insured for purposes of "arising out of" provision

48

where property owner hired contractor, the contractor had hired subcontractor, and subcontractor had hired underlying injured plaintiff).

Cincinnati counters that "Einstein was not doing work for [Pergament]," but "performed work on behalf of only Raymours," and thus there is an insufficient connection between Einstein's work and Pergament.  (ECF No. 80 at 11.)  Yet there need only exist *some* causal connection between Pergament's liability and Einstein's work or work done on Einstein's behalf.  *See Fed. Ins. Co.*, 639 F.3d at 568; *see also Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 324-25 (N.Y. 2017) (explaining that "'arising out of' is not the functional equivalent of 'proximately caused by'" (citations omitted)).  The relationship of a property owner to a subcontractor — even a sub-subcontractor — suffices.  *See Tremont Renaissance Hous. Dev. Fund Co., Inc. v. Lexington Ins. Co.*, No. 21-CV-2205(GBD)(JW), 2023 WL 5217987, at *4 (S.D.N.Y. Aug. 15, 2023) (finding plaintiff property owner to constitute additional insured "arising out of" scenario where plaintiff hired general contractor, who hired a subcontractor, who hired another subcontractor, who hired injured employee).

Accordingly, the Court finds that both conditions for additional insureds under the Cincinnati Insurance Policy are met, and the Court grants summary judgment to LM regarding Cincinnati's duty to defend Pergament in the underlying action, grants Safety's

49

motion for summary judgment regarding Cincinnati's duty to defend Pergament in the underlying action, and denies Cincinnati's motion for summary judgment on each claim by LM and Safety.

### III. Primary and Excess Coverage

"Under New York law, a court 'determining the priority of coverage among different policies must review and consider all of the relevant policies at issue,' including each policy's so-called 'other insurance' or 'excess coverage' provisions. *Amerisure Ins. Co. v. Selective Ins. Grp., Inc.*, No. 21-1516, 2023 WL 3311879, at *4 (2d Cir. May 9, 2023) (summary order) (quoting *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 716 (2007) (alterations omitted)).  "[W]here there are multiple policies covering the same risk, and each generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance." *Id.* (quoting *Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.*, 51 N.Y.2d 651, 655 (1980)).  The cancellation rule does not apply, however, "when its use would distort the meaning of the terms of the policies involved," and where the meaning "turns on consideration of the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it, as well as upon the wording of its provision concerning excess insurance." *Id.* (quoting *State Farm Fire & Cas. Co. v. LiMauro*, 65 N.Y.2d 369, 374 (1985)).

Safety and LM argue that Cincinnati's additional insured coverage of Raymours and Pergament, respectively, is primary and non-contributory. (ECF No. 77-1, Safety Motion, at 7-9; ECF No. 79-1, LM Motion, at 25-27.)

**A. Raymours**

Here, Cincinnati concedes that its coverage of Raymours is primary and non-contributory. (ECF No. 81, Cincinnati Opposition to Safety Motion, at 2.) Accordingly, the Court determines that Cincinnati's coverage of Raymours in the underlying action is primary and non-contributory to Safety's coverage. The Court grants summary judgment to Safety regarding a declaratory judgment that Cincinnati's coverage of Raymours is primary and non-contributory and denies summary judgment to Cincinnati on that claim.

**B. Pergament**

The Court has ruled on Cincinnati's argument that Pergament is not an additional insured under the Cincinnati Insurance Policy. Cincinnati also asserts that, even if Pergament *was* an additional insured, the Safety National Policy is primary. (ECF No. 81, Cincinnati Opposition to Safety Motion, at 14-16.)

The LM Insurance Policy with Pergament contains an "Other Insurance" section that provides, in part, as follows:

b. Excess Insurance

(1) This insurance is excess over:

51

. . .

> (b) Any other primary insurance available to [Pergament] covering liability for damages arising out of the premises or operations, or the products and completed operations, *for which [Pergament has] been added as an additional insured*.

(ECF No. 50-7 at 5 (emaphsis added).)

The Safety National Policy with Raymours contains the following "Other Insurance" clause:

**4. Other Insurance**

. . .

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

. . .

> (b) Any other primary insurance available to [Raymours] covering liability for damages arising out of the premises or operations, or the products and completed operations, *for which [Raymours has] been added as an additional insured*.

(ECF No. 50-13 at 11-12 (emphasis added).)

The Cincinnati Insurance Policy with Einstein contains the following provision in the "New York Contractors' Commercial General Liability Broadened Endorsement":

> *Where required by a written contract or agreement, this insurance is primary and/or noncontributory as respects any other insurance policy issued to the additional insured*, and such other insurance policy shall be excess and/or noncontributing, whichever applies, with this insurance.

(ECF No. 50-12 at 13 (emphasis added).)

Finally, the sample certificate of insurance in the 2017 Raymours-Einstein contract provides as follows:

> Re: Contracted Services, 2795 Richmond Ave., Staten Island, NY. Raymours Furniture Co., Inc. and Pergament Mall of SI, LLC are named as additional insured with respects to work performed by [Einstein]. *This insurance is primary and noncontributory over all other collectible insurances* inclusive of Umbrella Liability Coverages and limits.

(ECF No. 50-14 at 33 (emphasis added).)

Accordingly, the Court finds that Cincinnati's coverage of Pergament is primary and noncontributory over LM and Safety's coverage, given that (1) the LM Insurance Policy states that it is excess where Pergament is covered as an additional insured; (2) the Safety National Policy states that it is excess where Raymours is covered as an additional insured; (3) the Cincinnati Insurance Policy states that it is primary as to additional insureds where required by written contract; and (4) and the 2017 Raymours-Einstein contract requires that Einstein's insurance coverage of Pergament is primary and noncontributory.

Accordingly, the Court grants summary judgment to LM and Safety regarding a declaratory judgment that Cincinnati's

insurance coverage of Pergament is primary and noncontributory, and denies Cincinnati's motion for summary judgment on those claims.

## IV. Indemnification

"It is settled that '[e]ven in diversity actions, . . . federal law controls the justiciability of declaratory judgment actions.'" *Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 512 (S.D.N.Y. 2018) (quoting *Rosen v. Mega Bloks Inc.*, No. 06-cv-3471 (LTS) (GWG), 2009 WL 929474, at *2 (S.D.N.Y. Apr. 7, 2009)). Courts have found that "declaratory judgment actions regarding the duty to indemnify may be ripe even if liability has not been finally established in the underlying action" because "parties' adverse interests regarding indemnity may be 'of sufficient immediacy and reality' to establish a live controversy even before it is certain that an insurer will be called upon to indemnify." *Travelers Prop. Cas. Co. of Am.*, 2023 WL 4896169, at *17 (quoting *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92-93 (2d Cir. 2023); *see also Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 511-12 (S.D.N.Y. 2018) (collecting cases). Yet, "just because a court *may* hear a . . . claim [under the Declaratory Judgment Act] does not mean that it *must.*" *Travelers Prop. Cas. Co. of Am.*, 2023 WL 4896169, at *7. The Second Circuit recently clarified that district courts' use of

discretion regarding jurisdiction under the DJA should be informed by the following guidelines:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Admiral Ins. Co.*, 57 F.4th at 99–100 (alterations, internal quotation marks, and citations omitted).

Here, LM, Safety and Cincinnati move for a declaratory judgment regarding indemnification. Applying the *Admiral Insurance Company* factors, the Court exercises its discretion and declines to issue a declaration on the duty to indemnify. The underlying action remains pending, in which indemnification is sought against Einstein as an impleaded party. (ECF No. 56, Cincinnati Counter to LM Rule 56.1 Statement at ¶ 2.) Therefore, there is a risk of creating frictions and inconsistent judgments between this Court and the state court in the underlying action, and "a declaration would in no way finalize the controversy or settle the underlying legal issues, as liability would still need to be resolved" in the underlying action. *Travelers Prop. Cas. Co. of Am.*, 2023 WL 4896169, at *18. Issuing a declaration on

55

indemnification would also "encroach on the state court's jurisdiction to determine liability for the state law claims [in the] underlying action," and could create res judicata concerns. *Id.* Accordingly, in the interest of judicial efficiency and economy, as the state court must resolve some of these very issues in the underlying action, this Court declines to exercise jurisdiction to resolve questions of Cincinnati's duty to indemnify Raymours or Pergament.

### V.   Damages and Attorneys' Fees

LM seeks a declaratory judgment that LM is entitled to a money judgment against Cincinnati "in an amount equal to what LM . . . has incurred and will incur to defend Pergament" in the underlying action, plus interest.   (ECF No. 1, Complaint, at ¶¶ 61-63.) Safety also seeks a declaratory judgment that Cincinnati must pay "money damages in an amount totaling all past defense costs incurred to defend" Raymours and Pergament from the date of tender to the date of this Memorandum and Order.   (ECF No. 77, Safety Motion, at 1.)   Cincinnati counters that Safety does not have standing to request defense costs, as Cincinnati asserts that Safety has not paid for Raymours's costs in the underlying action. Safety has asserted that the Safety National Policy, issued to Raymours, contains a $250,000 deductible.   (ECF No. 56, Cincinnati Opposition to Safety Rule 56.1, at ¶ 26.)

"Where . . . an insured is forced to defend an action because the insurer wrongfully refused to provide a defense, the insured is entitled to recover its reasonable defense costs, including attorneys' fees." *Columbus McKinnon Corp. v. Travelers Indem. Co.*, 367 F. Supp. 3d 123, 155 (S.D.N.Y. 2018) (citation omitted); *see also Houston Cas. Co. v. Prosight Specialty Ins. Co.*, 462 F. Supp. 3d 443, 451 (S.D.N.Y. 2020) ("[T]he rule permitting . . . recovery when an insured has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations reflects the view that an insurer's duty to defend an insured extends to the defense of any action arising out of the occurrence . . . an insured's fee recovery in these circumstances is not so much an exception to the American rule that litigants pay their own fees and expenses, as it is a right that arises from the contractual duty to defend." (internal quotation marks and citations omitted)). "[W]here an insurer has breached its duty to defend, the insured's fees are presumed to be reasonable and the burden shifts to the insurer to establish that the fees are unreasonable." *Columbus McKinnon Corp.*, 367 F. Supp. 3d at 155 (citation omitted).

As the Court finds that Cincinnati has a duty to defend Raymours in the underlying action, the Court determines that LM and Safety were, despite their status as a plaintiff and/or a plaintiff via crossclaims, "cast in a defensive posture by the

57

legal steps an insurer takes in an effort to free itself from its policy obligations," *Houston Cas. Co.*, 462 F. Supp. 3d at 453, and thus are "entitled to recover" any defense costs expended in the underlying action, and relevant and reasonable attorneys' fees. *Columbus McKinnon Corp.*, 367 F. Supp. 3d at 155.

Although Safety has submitted invoices detailing some of Raymours's past costs in the underlying action, Safety has not submitted any invoices for *its* defense costs, fees, and litigation expenses.  And neither Safety nor Cincinnati has provided substantial case law regarding Safety's standing to seek damages. Therefore, the Court finds that separate briefing on costs and fees incurred by Safety is required to determine if Safety may be awarded a declaratory judgment regarding fees and costs, and the specific amount of any award. *See United Parcel Serv. v. Lexington Ins. Grp.*, 983 F. Supp. 2d 258, 268 (S.D.N.Y. 2013) (requesting additional briefing on the issue of fees and costs awarded to an insurer, where insurer successfully sought declaratory judgment regarding second insurer's duty to defend insurer's insured in underlying action).

Similarly, LM has not submitted any invoices or other exhibits detailing Pergament's costs and fees in the underlying action. Therefore, the Court finds that separate briefing on litigation fees and costs is required regarding the specific amount of any damages award.

**CONCLUSION**

For the foregoing reasons:

    (1)   LM and Safety's motions for summary judgment for declaratory judgments regarding Cincinnati's duty to indemnify is **DENIED** for lack of jurisdiction;

    (2)   LM's motion for summary judgment for a declaratory judgment that Cincinnati owes a duty to defend Pergament on a primary and non-contributory basis in the underlying action is **GRANTED;**

    (3)   Safety's motion for summary judgment for a declaratory judgment that Cincinnati owes a duty to defend Raymours on a primary and non-contributory basis in the underlying action and that Cincinnati owes a duty to defend Pergament in the underlying action on a primary and non-contributory basis is **GRANTED;**

    (4)   Cincinnati's motion for summary judgment against LM's claim for a declaratory judgment is **DENIED;**

    (5)   Cincinnati's motion for summary judgment against Safety's cross-claims is **DENIED.**

The Court directs the parties to appear before Magistrate Judge Levy for renewed settlement discussions. If settlement is unsuccessful, the parties are to inform the Court via a joint status report within two business days. At that time, the Court

will order additional briefing from the parties regarding the issue

of costs and attorneys fees.

**SO ORDERED**

Dated:      September 28, 2023
            Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York