United States District Court
Eastern District of New York

----------------------------------X

LM INSURANCE CORPORATION,

              Plaintiff,              **Memorandum and Order**

   - against -               No. 21-cv-1802 (KAM) (RML)

SAFETY NATIONAL CASUALTY
CORPORATION, and CINCINNATI
INSURANCE COMPANY,

              Defendants.

----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

This action (the "Declaratory Judgment Action") concerned the duty of Counter-Defendant Cincinnati Insurance Company ("Cincinnati") to defend Pergament Mall of Staten Island ("Pergament") and Raymours Furniture Company, Inc. ("Raymours") in a personal injury suit (the "Underlying Action") filed by Dean Kelly in New York state court against Pergament, Raymours, and Raymour & Flanigan Properties, LLC. *See Dean Kelly v. Pergament Mall of Staten Island LLC, Raymours Furniture Company, Inc., and Raymour & Flanigan Properties, LLC*, Index No. 31720/2017E. This Court presumes familiarity with its previous determination, on summary judgment, that Cincinnati had breached its duty to defend Pergament and Raymour in the Underlying Action and that Cincinnati's policy is primary and non-contributory to Defendant

and Cross-Claimant Safety National Casualty Corporation's ("Safety National") and Plaintiff LM Insurance Corporation's ("LM Insurance") policies for Pergament and Raymours.  Now pending before the Court are the Parties' submissions regarding the proper amount of attorneys' fees[1] to be awarded to Safety National.[2] Safety National seeks recovery from Cincinnati of:  (1) past attorneys' fees incurred defending Pergament and Raymours in the Underlying Action, plus interest, and (2) "attorneys' fees incurred by Safety National in [the instant Declaratory Judgment Action], plus interest."  (ECF No. 120, "Safety National Mot." at 4.)

For the reasons set forth below, Safety National's motion for past attorneys' fees incurred defending Pergament and Raymours in the Underlying Action is GRANTED, and Safety National's motion for attorneys' fees incurred in the instant Declaratory Judgment Action before this court is DENIED.  The Court finds that Cincinnati owes Safety National $102,620.45 in attorneys' fees, which includes prejudgment interest at a rate of nine percent per

---

[1] Safety National has not made a separate application for costs in connection with the Underlying Action or the Declaratory Judgment Action.

[2] LM Insurance did not move for attorneys' fees and costs.  LM Insurance informed the Court that Safety National reimbursed LM Insurance for all past defense costs for Pergament and "has been honoring its duty to defend [Pergament] going forward."  (ECF No. 115 at 1.)  As a result, LM Insurance's position is that the court has fully decided all claims for relief that it brought in this action and Safety National and Cincinnati have no pending claims against LM Insurance. (*Id.*)  LM Insurance did submit a partial opposition to Safety National's motion for attorney's fees and costs, which the Court shall address below.  (*See* ECF No. 131.)

annum since July 1, 2021, plus post-judgment interest as prescribed in 28 U.S.C. § 1961.

**Background**

## I.   Factual Background

The relevant factual background giving rise to this action was set forth in the Court's September 28, 2023 Memorandum and Order (the "September 28 Order") granting, among other things, Safety National's motion for summary judgment with respect to Cincinnati's liability for its breach of its duty to defend.  *See generally LM Ins. Corp. v. Safety National Casualty Corp.*, 695 F. Supp. 3d 270 (E.D.N.Y. 2023).  The Court summarizes that background only briefly here.

On December 7, 2017, Dean Kelly commenced the Underlying Action in New York state court alleging that, on September 17, 2017, he was "injured while working on a construction project at 2795 Richmond Avenue, Staten Island, NY (the 'Premises')."  *LM Ins.*, 695 F. Supp. 3d at 279.  "At the time of the alleged incident, Kelly was a painter employed by Black Dog Interiors," a subcontractor of Einstein Construction Group, LLC ("Einstein"), the construction company working on the project at the Premises.  *Id.* at 280.  Kelly alleged that he was injured when he was standing on a scaffold, which was already set up when he arrived at the Premises, and the platform he was standing on fell through the scaffold to the floor.  *Id.*  On September 27, 2021, "Pergament

3

impleaded Einstein into the underlying action, alleging that Einstein was responsible for any alleged liability in the underlying action, and seeking indemnification and judgment against Einstein. *LM Ins.*, 695 F. Supp. 3d at 280.

"Pergament is the current owner of the Premises," which, at the time of the alleged incident, was leased to Raymours with the condition that Raymours "obtain and maintain general liability insurance and to include Pergament as an additional insured party for any such insurance." *Id.* at 280-81. In April 2017, Raymours "signed a contract with Einstein regarding a construction project, titled 'Staten Island Showroom Remodel,' at the Premises" that required Einstein to "carry insurance" according to the terms of the contract. *Id.* at 282.

At the time of Kelly's accident, there were three relevant insurance policies: (1) LM Insurance had issued an insurance policy to Pergament as the Named Insured; (2) Safety National had issued a "commercial general liability insurance policy to Raymours" as the Named Insured; and (3) Cincinnati had issued an insurance policy to Einstein as the Named Insured. *Id.* at 281, 284. "In a letter dated May 8, 2018, and via subsequent emails dated July 12, 2018, August 10, 2018, August 19, 2018, August 28, 2018, September 28, 2018, December 12, 2018, December 31, 2018, January 22, 2019, February 11, 2019, March 5, 2019, April 3, 2019, May 8, 2019, November 11, 2019, November 12, 2019, and May 6, 2020, LM

[Insurance] tendered to Safety [National] the defense and indemnity of Pergament in the [U]nderlying [A]ction." *LM Ins.*, 695 F. Supp. 3d at 285. "By letters dated August 3, 2020, August 6, 2020, and October 27, 2020 to Cincinnati, LM [Insurance] tendered the defense and indemnity of Pergament in the [U]nderlying [A]ction to Cincinnati. In a letter dated January 21, 2021, Cincinnati disclaimed coverage for Pergament as an additional insured under the Cincinnati Insurance Policy." *Id.*

"On February 5, 2018, counsel for Raymours in the [U]nderlying [A]ction sent a letter . . . tendering the defense of Raymours in the underlying action to Cincinnati, as the insurer for Einstein." *Id.* Cincinnati responded on February 16, 2018 "acknowledging the tender and stating that it was initiating an investigation." *Id.* On January 27, 2022, "Cincinnati accepted Raymours' tender of a duty to defend, but rejected tender of Raymour & Flanigan Properties, LLC" ("Raymour Properties"). *Id.* On February 24, 2022, Raymours responded that "any acceptance of tender which does not also protect Raymours from cross claims asserted by its Landlord, Pergament, is wholly insufficient," and that an "insufficient tender acceptance which continues to leave the additional insured exposed need not be accepted." *Id.* The instant dispute followed.

## II. **Procedural History**

On April 2, 2021, LM Insurance commenced the instant

Declaratory Judgment Action against Safety National and Cincinnati, seeking a declaratory judgment that "Defendants must defend and indemnify LM [Insurance's] insured," Pergament, in the Underlying Action as well as attorneys' fees for the cost of defending Pergament in the Underlying Action. *LM Ins.*, 695 F. Supp. 3d at 275. Both Safety National and Cincinnati filed "crossclaims against each other, . . . asserting that any insurance coverage of Pergament is secondary, or excess, to the other's coverage." *Id.* Safety National also sought a "declaratory judgment that Cincinnati must defend and indemnify Safety [National's] insured, Raymours—in addition to LM [Insurance's] insured, Pergament—in the [U]nderlying [A]ction, and . . . damages." *Id.*

On October 25, 2022, LM Insurance moved for summary judgment against Safety National and Cincinnati, Safety National cross-moved for summary judgment against Cincinnati, and Cincinnati cross-moved for summary judgment against LM Insurance and Safety National. *LM Ins.*, 695 F. Supp. 3d at 270 (citing ECF Nos. 77–79). In its motion for summary judgment, LM Insurance argued Safety National's "insurance policy with Raymours includes coverage for Pergament, as an 'additional insured' on the policy, based on the language of Pergament's lease with Raymours" and that "Cincinnati's insurance policy with Einstein includes coverage for Pergament as an 'additional insured' on the policy based on the

language of Einstein's April 3, 2017 contract with Raymours." *Id.* In response, Safety National argued that the language of Einstein's contract with Raymours and Cincinnati's insurance policy with Einstein "requires Cincinnati to defend and indemnify Raymours in the underlying action." *Id.* Cincinnati responded that its policy with Einstein "does not name or include Pergament as an additional insured" and "Safety lacks standing to assert crossclaims against Cincinnati regarding coverage of Raymours." *Id.*

On summary judgment, this Court determined that Cincinnati owes both Raymours and Pergament a duty to defend and that Cincinnati's additional insured coverage of Raymours and Pergament, respectively, is "primary and non-contributory" to the LM Insurance and Safety National policies. *Id.* at 290-98. Although, the Court also determined on summary judgment that Safety National was "'entitled to recover' any defense costs expended in the [U]nderlying [A]ction, and relevant and reasonable attorneys' fees," the Court declined to make any such award on summary judgment as Safety National failed to submit "any invoices for its defense costs, fees, and litigation expenses." *Id.* at 300-01. On April 26, 2024, Safety National requested a pre-motion conference regarding its anticipated motion for attorneys' fees. The Court held a pre-motion conference on May 22, 2024 and Safety's motion for attorneys' fees was fully briefed on July 1, 2024. Safety National submitted a supplemental declaration in support of its

motion for attorneys' fees on February 21, 2025.

## Legal Standard

"Where an insurer breaches the duty to defend, it must pay damages in the form of attorneys' fees and litigation expenses reasonably incurred by the insured in defending the underlying action." *United Parcel Serv. v. Lexington Ins. Grp.*, 983 F. Supp. 2d 258, 267–68 (S.D.N.Y. 2013). "Generally, the insurer will be liable for defense costs from the time that the duty was triggered (*i.e.,* when a complaint alleging facts arguably entitling the insured to coverage is made) until it is determined that the actual facts place the case outside the coverage provided." *Id.* at 268 (quoting *Maryland Cas. Co. v. W.R. Grace & Co.*, No. 88-cv-4337, 1994 WL 167962, at *5 (S.D.N.Y. Apr. 29, 1994)).

Safety National argues that it is entitled to a total of $169,674.35 in damages, plus interest, which is comprised of (1) the amount in attorneys' fees Safety National incurred defending Raymours in the Underlying Action ($78,448.86); (2) the amount in attorneys' fees Safety National incurred defending Pergament in the Underlying Action ($47,845.79); and (3) the amount in attorneys' fees Safety National incurred in the instant federal Declaratory Judgment Action ($43,379.70), together with prejudgment interest at a rate of nine percent per annum from July 1, 2024 to the date a judgment is entered. (ECF No. 120 at 12.) The Court will first address Safety National's motion for

attorneys' fees incurred defending Raymours and Pergament in the Underlying Action and then turn to Safety National's motion for attorneys' fees incurred in the instant Declaratory Judgment Action.

## **Discussion**

### I.  **Safety National's Entitlement to Attorneys' Fees incurred in the Underlying Action**

As set forth above, the Court determined on summary judgment that Cincinnati breached its duty to defend Pergament and Raymour in the Underlying Action and that Cincinnati's policy for Pergament and Raymours is primary and non-contributory.  *LM Ins.*, 695 F. Supp. 3d at 290-98.  Now, Safety National seeks to recover from Cincinnati all attorney's fees that it paid in defense of Raymours and Pergament in the Underlying Action.  Accordingly, Safety National's entitlement to recover these fees arises from the principle of "equitable contribution" rather than subrogation because Safety National "is not seeking recovery from a third-party wrongdoer but from another insurer."  *Maryland Cas.*, 218 F.3d at 210 (2d Cir. 2000).

Indeed, it is well settled that "the obligations or rights to contribution [that] may exist between two or more insurers of the same event flow from equitable principles."  *Id.* at 210 (citing *U.S. Fire Ins. Co. v. Fed. Ins. Co.*, 858 F.2d 882, 888 (2d Cir. 1988); *Aetna Cas. & Surety Co. v. Merchants Mut. Ins. Co.*, 78

A.D.2d 176 (3d Dep't 1980), *abrogated on other grounds by Motor Vehicle Accident Indemnification Corp. v. Aetna Cas. & Surety Co.*, 89 N.Y.2d 214, 220 (1996)). Where an insurer "refuse[s] to defend or indemnify the insured[,] . . . a paying insurer can recover from a non-paying insurer." *Maryland Cas. Co.*, 218 F.3d at 209. The basic purpose of contribution is "to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." *Beazley Ins. Co., Inc. v. Ace Am. Ins. Co.*, 150 F. Supp. 3d 345, 358 (S.D.N.Y. 2015) (quoting *Everest Nat. Ins. Co. v. Evanston Ins. Co.*, No. 09-cv-2077 (RLH) (PAL), 2011 WL 5434007, at *4 (D. Nev. Feb. 8, 2011)).

Thus, it is a "well-settled principle in the law of contribution that when one party jointly liable on an obligation pays more than its pro rata share, it may compel the co-obligors to contribute their share of the amount paid." *Maryland Cas.*, 218 F.3d at 210. Indeed, "where the insurance contracts reveal multiple coverage, the court exercises its equity powers to imply a contract between the coinsurers to contribute, and the proportion of their required contribution is grounded in the policy limits set forth in the contract of each insurer with the insured." *U.S. Fire Ins.*, 858 F.2d at 888. Here, where the Court has already determined Cincinnati's coverage is primary and non-contributory, it follows that Cincinnati's "proportion of . . . required

contribution" is the entirety of the defense costs incurred by Safety National in the Underlying Action. *Id.*

Having reviewed the declarations and billing records that Safety National submitted in support of its motion, the Court finds that the attorneys' fees Safety National seeks to recover in connection to the Underlying Action can be separated into three categories: (1) attorneys' fees paid directly by Safety National in the defense of Raymours (the "Raymours Fees"); (2) attorneys' fees directly paid by Safety National in the defense of Pergament (the "Pergament Fees"); and (3) attorneys' fees paid by Safety National to LM Insurance for fees incurred by LM Insurance in defense of Pergament in the Underlying Action, before Safety National accepted the tender for Pergament (the "LM Insurance-Pergament Fees"). Cincinnati makes three objections to Safety National's motion for fees in these categories, which the Court shall address in turn.

*First*, Cincinnati argues that Safety National is not entitled to recover certain fees related to purported "contractual indemnification claims." (ECF No. 132 at 14.) Citing *Perchinsky v. State of N.Y.*, Cincinnati argues that "defensive claims against others besides the contractual indemnitor may be recoverable but not for enforcing contractual indemnification claims." 232 A.D.2d 34, 39 (3d Dep't 1997); (ECF No. 132 at 14.) Safety National responds that *Perchinsky* is inapposite because the court in

*Perchinsky* denied an award for counsel fees "to a party seeking to recover the cost to enforce a contractual indemnification right against the contractual indemnitor itself," whereas here, the indemnification claims in the underlying action are against a third-party. (ECF No. 133 at 6 (citing *Charter Oak Fire Ins. Co. v. Erie Ins. Co.*, 20-cv-1408 (MAD) (DJS), 2021 WL 5810318, at *4 (N.D.N.Y. 2021).) This Court agrees with Safety National.

The court in *Perchinsky* clearly stated that an insured's recovery "should include not only the cost of defending the main claim, but also the costs of pursuing the third-party actions because the filing of the third-party actions was an essential component of the defense of the main action." *Perchinsky*, 232 A.D.2d at 39. Moreover, "courts have found that third-party claims and cross claims similar to those at issue here are an 'essential component' of the underlying defense and, as a result, costs associated with those claims qualify as reimbursable defense costs." *Travelers Prop. & Cas. Co. of Am. v. Hudson Excess Ins. Co.*, 660 F. Supp. 3d 187, 195 (S.D.N.Y. 2023) (quoting *Liberty Mutual Ins. Co. v. N.Y. Marine & Gen. Ins. Co.*, 505 F. Supp. 3d 260, 275 (S.D.N.Y. 2020) ("650 Owner's indemnification cross-claim was an essential component of its defense of the Underlying Action, so the duty to defend also covers the cross-claim."). Accordingly, the Court finds that Safety National is entitled to recover from Cincinnati the attorneys' fees incurred prosecuting these third-

party claims as they are an "essential component of their defense of the main [U]nderlying [A]ction." *Jenel Mgmt. Corp. v. Pac. Ins. Co.*, 55 A.D. 3d 313, 313 (1st Dep't 2008).

*Second*, Cincinnati objects to Safety National's motion to recover fees incurred by Raymours and Pergament that it alleges, without support or citing any legal authority, were related to the instant Declaratory Judgment Action before this Court. (ECF No. 132 at 14.) Cincinnati's conclusory argument that the billing records Safety National submitted in support of its motion clearly "demonstrate that there was a joint counsel plan" between attorneys performing work on behalf of Raymours and Pergament in the Underlying Action and attorneys performing work on behalf of Safety National in the instant Declaratory Judgment Action before this Court is unavailing. (ECF No. 132 at 14.)

Indeed, Safety National responds that these fees *are* recoverable because they "were incurred [in the Underlying Action in defense of Raymours and Pergament as a direct result of] Cincinnati['s] refus[al] to defend Raymours." (ECF No. 133 at 6-7.) This Court again agrees with Safety National. As noted above, it is well settled that "an insurer's duty to defend an insured extends to the defense of any action arising out of the occurrence." *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 597-98 (2004). This includes "a[n insured's] defense against an insurer's declaratory judgment action," *Id.* at 598,

which is distinguishable from Safety National's separate motion for fees incurred in its "affirmative action brought . . . to settle its rights" against Cincinnati discussed below.[3]  *Match Grp., LLC v. Beazley Underwriting Ltd.*, No. 22-cv-4629 (LGS) (SLC), 2023 WL 9603886, at *3 (S.D.N.Y. Dec. 21, 2023) (quoting *Mighty Midgets v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21 (1979)). Accordingly, having reviewed the billings records and detailed time entries submitted by Safety National, the Court finds that Safety National is entitled to recover the disputed fees paid on behalf of Raymours and Pergament because they stem from an "action arising out of the occurrence."  *Id.*

   *Third*, Cincinnati argues that Safety National cannot recover the LM Insurance-Pergament Fees because Safety National's payment to LM Insurance is a "voluntary payment" that constitutes "'insured contract' coverage under the Cincinnati policy" that requires an "indemnification finding in favor of Pergament Mall against Raymours in the Underlying Action."  (ECF No. 132 at 11–12.) Safety National responds that the payment was not voluntary because it was made after Safety National determined it "owed additional insured coverage to Pergament Mall and therefore agreed to pay the past fees incurred by LM Insurance to defend Pergament Mall," and

---

[3] As set forth in detail in Section II, *infra*, Safety National may not recover attorneys' fees incurred in the instant Declaratory Judgment before this Court because in that case Safety National was not placed in a "defensive posture such that an attorneys' fees award is warranted."  *Match Grp.*, 2023 WL 9603886 at *4.

that Safety National did so "because Cincinnati refused to recognize that it had the primary obligation to defend Pergament." (ECF No. 133 at 7.)  The facts and law support Safety National's position.

In the Second Circuit, "[c]ontribution rights, if any, between two or more insurance companies insuring the same event are not based on the law of contracts." *Maryland Cas.*, 218 F.3d at 210.  Where, as here, an insurer enters into a prior settlement, "whatever obligations or rights to contribution may exist between two or more insurers of the same event flow from equitable principles." *Id.* at 211.  The Court determined on summary judgment that Cincinnati's duty to defend Pergament and Raymours was primary and non-contributory to Safety National's obligation.  *LM Ins.*, 695 F. Supp. 3d at 299.  It follows, therefore, that under equitable principles, that Safety National is entitled to recover the LM Insurance-Pergament Fees from Cincinnati.

## A.    The Reasonableness of the Attorneys' Fees Incurred

Having determined Safety National is entitled to recover the attorneys' fees it seeks to recover, the Court now considers the reasonableness of the requested fees.  "In *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit articulated the method for calculating reasonable attorney's fees: a reasonable hourly rate multiplied by a reasonable number of hours extended on the work

constitutes the 'presumptively reasonable fee,' also known as the 'lodestar.'" *Match Grp.*, 2023 WL 9603886, at *6. When determining the reasonable hourly rate, courts consider the prevailing hourly rate within its district as the rate a "reasonable, paying client would have paid." *Arbor Hill*, 522 F.3d at 191. This requires the party seeking fees to provide the Court with certain information, such as the hourly rate for each attorney who worked on the matter, the experience level of said attorneys, and the numbers of hours they worked. *See Match Grp.*, 2023 WL 9603886 at *7-10 (evaluating the reasonableness of the hourly rate and hours expended by considering, among other things, the prevailing hourly rate in the district, the experience level of the attorneys, the complexity of the matter, and the hours expended).

As an initial matter, the Court's review of Safety National's motion for attorneys' fees (ECF No. 120) along with the documents submitted in support of the motion, including but not limited to declarations, contemporaneous time keeping records, and invoices (*See* ECF Nos. 121-30), revealed numerous discrepancies in calculations and missing information that hindered the Court's ability to evaluate the reasonableness of the requested attorney's fees and determine an award.[4] As a result, after Safety National's

---

[4] For example, as noted above, Safety National argues that it is entitled to recover $169,674.35 in damages, plus interest, which is comprised of (1) the amount in attorneys' fees Safety National incurred defending Raymours in the Underlying Action ($78,448.86); (2) the amount in attorneys' fees Safety National incurred defending Pergament in the Underlying Action ($47,845.79);

motion for attorney's fees was fully briefed, the Court directed Safety National to submit a sworn supplemental declaration providing certain summaries and information, such as the hourly rate for each attorney and paralegal who worked on the matter, the experience level of said attorneys, and the numbers of hours they worked, so that the Court could assess the reasonableness of the fees. (*See* ECF Dkt. Orders dated Feb. 12, 2025 & Feb. 19, 2025.)[5]

---

and (3) the amount in attorneys' fees Safety National incurred in the Declaratory Judgment Action ($43,379.70). Safety National has not made a separate application for costs in connection with the Underlying Action. Having reviewed the declarations and billing records Safety National submitted in support of its motion, though, these amounts are not supported by the underlying documents. The Declaration of Steven Eskridge dated June 5, 2024 states that the total paid by Safety National in the defense of Raymours in the Underlying Action—the Raymours Fees—is $40,296.83 and the total paid by Safety National to LM Insurance for defense costs incurred by LM Insurance in the defense of Pergament in the Underlying Action—the LM Insurance-Pergament Fees—is $27,402.10. (ECF No. 124 ¶¶ 10-11.) The Declaration of Katherine Hooge dated June 4, 2024 states that the total paid by Safety National in the defense of Pergament in the Underlying Action—the Pergament Fees—is $20,334.69. (ECF No. 126 ¶ 10.)

Despite these sworn statements, in its Memorandum of Law in Support of its Motion for Attorney's Fees and Costs, Safety National calculates the total fees paid in defense of Raymours and inexplicably adds the LM Insurance-Pergament Fees to the Raymours Fees *and* to the Pergament Fees to reach its proposed totals. (ECF No. 120 at 6 ("As per the invoices submitted therewith, the totals, to date are: Raymours (includes settlement with LM Insurance): $6,7698.03 [*sic*]").) Safety National then calculated interest for the Raymours fees based on this combined total to reach its proposed final sum of $78,448.86 paid in defense of Raymours in the Underlying Action. (ECF No. 121, Pavloff Decl. ¶ 13.) As noted above, Safety National then *also* added the LM Insurance Fees to the Pergament Fees for a proposed total of $47,334.79. (ECF No. 120 at 6 ("As per the invoices submitted therewith, the totals, to date are: . . . Pergament: $47,334.79").) Safety National has cited no authority to support double counting the LM Insurance-Pergament Fees against the Raymours Fees and the Pergament Fees and the Court declines to do so here.

[5] The Court's February 19, 2025 Order was not the first time Safety National was directed to submit the necessary detailed summary information in support of its motion for attorneys' fees and costs. At the May 22 Pre-Motion Conference, the Court directed Safety National to provide, in summary form, all the information regarding the fees and costs Safety National sought to recover along with the supporting documentation. In the Minute Entry for the May 22 Pre-Motion Conference, the Court again directed Safety National to submit "all necessary documentation supporting its requests, ***along with summaries and***

Safety National provided the supplemental declaration on February 21, 2025. (*See* ECF No. 134, "Supplemental Pavloff Declaration".)

Upon receiving the Supplemental Pavloff Declaration, the Court compared it to the declarations, invoices, and contemporaneous attorney time records provided to date and continued to identify discrepancies in the amount of fees Safety National requests in its motion, the amount of fees Safety National swore it paid in the declarations and billing records first submitted in support of its motion, and the amount of fees the Court calculated based on the Supplemental Pavloff Declaration, which provided, among other things, the hourly rate and hours worked for all attorneys and paralegals who performed work in defense of Raymours and Pergament in the Underlying Action, a number that should, presumably, add up to the total amount of attorneys' fees Safety National has sworn that it paid and is requesting in its motion. Thus, despite ample opportunities to present the Court ordered "summaries and detailed calculations" that would permit the Court to evaluate the reasonableness of the fees and determine an award, Safety National has failed to do so. (ECF Minute Entry dated May 22, 2025.)

Ultimately, though, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing

---

*detailed calculations* permitting the Court to ascertain a precise award." (ECF Minute Entry dated May 22, 2025.)

perfection," *Fox v. Vice*, 563 U.S. 826, 838 (2011), and courts have "considerable discretion in determining what constitutes a reasonable award of attorneys' fees." *Wentworth Grp. Inc. v. Evanston Ins. Co.*, No. 20-cv-6711 (GBD) (JLC), 2022 WL 336456, at *7 (S.D.N.Y. Feb. 4, 2022) ("*Wentworth I*"), *report and recommendation adopted*, 2022 WL 909794 (S.D.N.Y. Mar. 29, 2022) ("*Wentworth II*"). The Court has already determined that Safety National is entitled to recover attorneys' fees in connection with the Underlying Action, and so taking "into account its overall sense of [the] suit," the Court will reconcile these discrepancies by relying on the sworn Supplemental Pavloff Declaration in conjunction with the contemporaneous attorney time records and invoices to independently calculate an award. *Fox*, 563 U.S. at 838 ("[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."); *Williamsburg Climbing Gym Co. LLC v. Ronit Realty LLC*, No. 20-cv-2073 (FB) (RML), 2023 WL 1072952, at *1 (E.D.N.Y. Jan. 9, 2023), *report and recommendation adopted*, 2023 WL 1070615 (E.D.N.Y. Jan. 27, 2023) ("Detailed affidavits and other documentary evidence can afford a sufficient basis to compute damages.") (citations omitted).

### 1.   Reasonable Hourly Rate

"The Supreme Court directed that district courts should use the prevailing market rates in the community in calculating the

19

lodestar" or presumptively reasonable fee. *Lynch v. Town of Southampton,* 492 F. Supp. 2d 197, 210-11 (E.D.N.Y. 2007) (citing *Blum v. Stenson,* 465 U.S. 886, 895 (1984)).  The "community" is defined as the district in which the court sits, but courts may consider an "out-of-district hourly rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys—in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *See Arbor Hill,* 493 F.3d at 191; *Lynch,* 492 F. Supp. 2d at 210-11; *Polk v. N.Y. State Dep't of Corr. Serv.,* 722 F.2d 23, 25 (2d Cir. 1983) (same).  "After determining the amount of the presumptively reasonable fee, the court may use its discretion to increase or reduce the amount based on the particular circumstances of the case." *Emerald Invs.,* 2007 WL 1834507, at *5 (quoting *Chan v. Sung Yue Tung Corp.,* No. 03-cv-6048, 2007 WL 1373118, at *1 (S.D.N.Y. May 8, 2007)).

In the Eastern District of New York, hourly rates range from approximately $300 to $450 per hour for partners, $200 to $325 per hour for associates, and $75 to $150 per hour for paralegals. *See Williamsburg Climbing Gym Co. LLC v. Ronit Realty LLC*, No. 20-cv-2073 (FB) (RML), 2023 WL 1072952, at *4 (E.D.N.Y. Jan. 9, 2023), *report and recommendation adopted*, 2023 WL 1070615 (Jan. 27, 2023) ("In this district, hourly rates "generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00

to $325.00 for those with less experience."); *Interpool, Inc. v. JJS Trans. & Distrib. Co., Inc.*, No. 22-cv-1102 (JMA)(JMW), 2022 WL 17335670, at *4 (E.D.N.Y. Nov. 30, 2022) ("here in the Eastern District of New York, hourly rates appear to 'generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience.'"); *Trustees of the Pavers & Road Builders Dist. Council Welfare, Pension & Annuity Funds v. Kore Contracting Corp.*, No. 24-cv-3235, 2025 WL 825049, at *14 (E.D.N.Y. Mar. 14, 2025) ("Courts in this District generally consider hourly rates ranging from $70 to $150 to be reasonable for paralegals.").

*First*, Safety National's request for an award of attorneys' fees paid in defense of Raymours is based on the following hourly rates for attorneys at the law firms of Mintzner Sarowitz Zeris

21

Ledva & Meyers, LLP from 2018 to 2023 and Murphy Sanchez PLLC in February 2023:

| Attorney | Hourly Rate (2018 to 2023) | Hourly Rate (2023) |
|---|---|---|
| Bradley Levien | $190.00 | $215.00 |
| Bradley Levien (*Travel Time*) | $95.00 | $107.50 |
| Thomas Darmody | $190.00[6] | N/A |
| Thomas Darmody (*Travel Time*) | $95.00 | N/A |
| Erika Omundson | $180.00 | N/A |
| Erika Omundson (*Travel Time*) | $90.00 | N/A |
| Peter Frucchione | $190.00 | N/A |
| Peter Frucchione (*Travel Time*) | $95.00 | N/A |
| Marc Sloane | $185.00 | N/A |
| Judith Elsherbini | $180.00 | N/A |
| Shaun Ihne | N/A | $190.00 |

(ECF No. 134 ¶ 3.)  No paralegals performed work in defense of Raymours at either Mintzner Sarowitz Zeris Ledva & Meyers, LLP from 2018 to 2023 or Murphy Sanchez PLLC.  (*Id.*)

---

[6] In the Supplemental Declaration of Sherri N. Pavloff dated February 21, 2025 ("Pavloff Supplemental Declaration"), Ms. Pavloff states, "Thomas Darmody billed at $190 per hour on Invoice 424902 for a total of 4.2 hours" and "Thomas Darmody billed at $185 per hour on Invoice 462703 for 4.1 hours and on Invoice 538553 for 7.2 hours for a total of 11.3 hours."  (ECF No. 134, Pavloff Supp. Decl. ¶ 3.)  Having reviewed Invoice 462703 and Invoice 538553, the Court finds Mr. Darmody billed on both invoices at a rate of $190 per hour.  (*See* ECF No. 125 at 38, 74.)

*Second*, Safety National's request for an award of attorneys' fees paid in defense of Pergament is based on the following hourly rates for attorneys at the law firm of Nicoletti Spinner Ryan Gulino Pinter LLP:[7]

| Attorney | Hourly Rate |
|---|---|
| Joseph Gulino | $210.00 |
| Kevin Ryan | $210.00 |
| Sean Edwards | $190.00 |

In addition, time spent by paralegals who performed work in defense of Pergament at the law firm of Nicoletti Spinner Ryan Gulino Pinter LLP is based on an hourly rate of $80. (ECF No. 134 ¶ 9.)

*Third*, and finally, Safety National's request for an award of attorneys' fees paid to LM Insurance is based on the following

---

[7] As the LM Insurance-Pergament Fees were paid by Safety National to LM Insurance as part of a settlement agreement to reimburse LM Insurance for the defense costs it incurred defending *Pergament* in the Underlying Action, the Court shall consider the reasonableness of the LM Insurance-Pergament Fees separately.

hourly rates for attorneys at the law firm of Correia, Conway & Stiefeld:

| Attorney | Hourly Rate |
|---|---|
| Laurent Chevalier | $143.00 |
| Robert Gross | $116.00 |
| Rose Harper | $116.00 |
| Ronese Brooks | $116.00 |
| Chikodi Emerenini | $142.00 |
| Kevin McGinnis | $163.00 |
| David Berkley | $116.00 |
| Dawn Gilbert | $142.00 |
| Jose Gomez | $144.00 |

In addition, time spent by paralegals who performed work in defense of Pergament at the law firm of Correia, Conway & Stiefeld is based on an hourly rate of $71 to $76. (ECF No. 134 ¶ 9.)

In determining whether an attorney's hourly rate is reasonable, courts consider the experience level of each attorney. *Match Grp.*, 2023 WL 9603886, at *7. *First*, the attorneys who performed work in defense of Raymours at the law firms of Mintzner Sarowitz Zeris Ledva & Meyers, LLP from 2018 to 2023 and Murphy Sanchez PLLC in 2023 include Mr. Levien who is a litigation partner admitted to the bar in 1996; Mr. Darmody who is a litigation partner admitted to the bar in 1997; Ms. Omundson who is a litigation partner admitted to the bar in 1998; Mr. Frucchione who

24

is a litigation partner admitted to the bar in 1998; Mr. Sloane who is a litigation partner admitted to the bar in 1989; Ms. Elsherbini who is a senior associate admitted to the bar in 1998; and Mr. Ihne who is an associate admitted to the bar in 2023. (ECF No. 134 ¶ 3.)  *Second*, the attorneys who performed work in defense of Pergament at the law firm of Nicoletti Spinner Ryan Gulino Pinter LLP include Mr. Gulino who is a partner admitted to the bar in 1984; Mr. Ryan who is a partner admitted to the bar in 1989; and Mr. Edwards who is an associate admitted to the bar in 2001. (ECF No. 134 ¶ 9.)  *Third*, the attorneys who performed work in defense of Pergament at the law firm of Correia, Conway & Stiefeld include Mr. Chevalier who is an associate admitted to the bar in 2010; Mr. Gross who is an associate admitted to the bar in 1991; Ms. Harper who is an associate admitted to the bar in 2014; Mr. Brooks who is an associate admitted to the bar in 2014; Ms. Emerenini who is an associate admitted to the bar in 2011; Mr. McGinnis who is an attorney admitted to the bar in 2002; Mr. Berkley who is an attorney admitted to the bar in 1984; Ms. Gilbert who is an associate admitted to the bar in 1998; and Mr. Gomez who is an attorney who was admitted to the bar in 2008. (ECF No. 134 ¶8.)

As noted above, courts in this district have regularly awarded experienced attorneys hourly rates ranging from $300 to $450 and senior associates hourly rates ranging from $200 to $325.

*See Williamsburg Climbing Gym*, 2023 WL 1072952, at *4. Courts in this district also award attorneys' fees for travel, particularly where, as here, they are not awarded based on an attorney's full rate. *See Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, 549 F. Supp. 2d 274, 287 (E.D.N.Y. 2008) ("[E]xpenses relating to travel, including transportation and meals, are routinely recoverable."); *Levy v. Powell*, No. 00-cv-4499 (SJF), 2005 WL 1719972, at 7 (E.D.N.Y. Jul. 22, 2005) (awarding expenses for travel at 50% of the rate charged for other services because "it is inappropriate to compensate attorneys for their full rate for time spent traveling") (citing *Duke v. Cnty. of Nassau*, No. 97-cv-1495 (JS), 2003 WL 23315463, at *5 (E.D.N.Y. Apr. 14, 2003)).

Accordingly, the Court finds that the requested hourly rates for services rendered by the attorneys in the Underlying Action, including those for travel fees, fall well within, and indeed well below, these presumptively reasonable amounts. The Court further finds that the requested hourly rate for services rendered by paralegals in the Underlying Action fall within the regularly awarded range of $70 to $150. *See Trustees of the Pavers & Road Builders*, 2025 WL 825049, at *14 ("Courts in this District generally consider hourly rates ranging from $70 to $150 to be reasonable for paralegals."). Notably, Cincinnati does not oppose these rates as unreasonable and the Court finds that, in light of the attorneys' experience and the nature of the case, the requested

26

hourly rates are reasonable in this district. *Olin Corp. v. Ins. Co. of N. Am.*, 218 F. Supp. 3d 212, 228 (S.D.N.Y. 2016) ("Where an insurer has breached its duty to defend, the insured's fees are presumed to be reasonable and the burden shifts to the insurer to establish that the fees are unreasonable.").

## 2.  Hours Reasonably Expended

The court next turns to the issue of whether the number of hours expended by Plaintiff's counsel was reasonable. A party seeking attorneys' fees "must support that request with contemporaneous time records that show 'for each attorney, the date, the hours expended, and the nature of the work done.'" *Cablevision Sys. New York City Corp. v. Diaz,* No. 01-cv-4340, 2002 WL 31045855, at *5 (S.D.N.Y. Jul. 10, 2002) (quoting *N.Y. State Ass'c for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1154 (2d Cir. 1983)); *see also Kingvision Pay-Per-View v. The Body Shop,* No. 00-cv-1089 (LTS) (KNF), 2002 WL 393091, at *5 (S.D.N.Y. Mar. 13, 2002) (denying award of attorneys' fees where information regarding how the hours expended resulted in the requested fees was not provided even though the requested amount of $1,000 was reasonable).  The number of hours claimed must not be "excessive or duplicative." *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 756, 764 (2d Cir. 1998); *see also Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983) (directing district courts to exclude hours not "reasonably expended").  In determining the

27

presumptively reasonable fee, a court may adjust the hours actually billed to a number the court determines to have been reasonably expended. *See Konits v. Karahalis,* 409 F. App'x 418, 421 (2d Cir. 2011). In adjusting the number of hours, the court "must state its reasons for doing so as specifically as possible." *LeBlanc-Sternberg,* 143 F.3d at 764 (citation omitted).

Safety National has provided the Court with detailed contemporaneous time records documenting the hours worked by the attorneys and paralegals, and describing the work performed, but, as noted above, these time records have not always aligned with the sworn summary declarations submitted by Safety National. (*See* ECF Nos. 121–130, Affidavits and Exhibits in Support of Motion; ECF No. 134, Supp. Pavloff Decl.) Having reviewed all of the submissions, the Court finds that Safety National accounted for approximately 218.9 hours of work in defense of Raymours, 99.1 hours of work in defense of Pergament after Safety National accepted tender of Pergament, and 142.4 hours of work in defense of Pergament before Safety National accepted tender of Pergament. (*See* ECF No. 134 ¶¶ 3, 8, 9).

Cincinnati again does not dispute the number of hours any of the aforementioned attorneys expended in connection with the Underlying Action and has failed to present any arguments as to why those hours were unreasonable. Accordingly, the Court finds Cincinnati has not met its burden to establish that the fees are

unreasonable, and finds that the hours expended by these attorneys were reasonable for the purposes of awarding attorneys' fees. *See Olin Corp.*, 218 F. Supp. 3d at 228 (S.D.N.Y. 2016).

### 3. Calculation of Reasonable Attorneys' Fees

Having determined that the rates charged and hours expended by these attorneys were reasonable, after reviewing the Parties' submissions, including the declarations and billing records Safety National submitted in support of its motion, the Court finds that Safety National is entitled to recover the following amounts based

on following calculations:

1. Raymours Fees: $40,671.75

| Timekeeper Name | Hourly Rate[8] | Hours Worked[9] | Total Billed |
|---|---|---|---|
| **<u>2018 to 2023</u>** | | | |
| Bradley Levien | $190.00 | 138.4 | $26,296.00 |
| Bradley Levien (*Travel Time*) | $95.00 | 1.9 | $180.50 |
| Thomas Darmody | $190 | 15.5 | $2,945.00 |
| Thomas Darmody (*Travel Time*) | $95.00 | 2.4 | $228.00 |
| Erika Omundson | $180.00 | 8.5 | $1,530.00 |
| Erika Omundson (*Travel Time*) | $90.00 | 3.2 | $288.00 |
| Peter Frucchione | $190.00 | 7.4 | $1,406.00 |
| Peter Frucchione (Travel Time) | $95.00 | 3.6 | $342.00 |
| Marc Sloane | $185.00 | 2.3 | $425.50 |
| Judith Elsherbini | $180.00 | 3.6 | $648.00 |
| **<u>2023</u>** | | | |
| Bradley Levien | $215.00 | 22.9 | $4,923.50 |
| Bradley Levien (*Travel Time*) | $107.50 | 3.5 | $376.25 |
| Shaun Ihne | $190.00 | 5.7 | $1,083.00 |
| | | **Total Fees:** | $40,671.75 |

---

[8] (*See* ECF No. 134 at 2-3.)

[9] (*See* ECF No. 134 at 2-3.)

2. Pergament Fees: $20,514.00

| Timekeeper Name | Hourly Rate[10] | Hours Worked[11] | Total Billed |
|---|---|---|---|
| Joseph Gulino | $210.00 | 2.6 | $546.00 |
| Kevin Ryan | $210.00 | 82.2 | $17,262.00 |
| Sean Edwrads | $210.00 | 14.2 | $2,698.00 |
| Robert O'Reilly | $210.00 | 0.1 | 8 |
| | | Total Fees: | $20,514.00 |

3. LM Insurance-Pergament Fees: $15,649.60[12]

| Timekeeper Name | Hourly Rate[13] | Hours Worked[14] | Total Billed |
|---|---|---|---|
| Laurent Chevalier | $143.00 | 13.8 | $1,973.40 |
| Robert Gross | $116.00 | 2.9 | $336.40 |
| Rose Harper | $116.00 | 2.2 | $255.20 |
| Ronese Brooks | $116.00 | 0.8 | $92.80 |
| Chikodi Emerenini | $142.00 | 3.6 | $511.20 |
| Kevin McGinnis | $163.00 | 0.2 | $32.60 |
| David Berkley | $116.00 | 1.2 | $139.20 |
| Dawn Gilbert | $142.00 | 49.8 | $7,071.60 |
| Jose Gomez | $144.00 | 2.5 | $360.00 |
| Vivian Roche | $76.00 | 14.8 | $1,124.80 |
| Susan Prosperi | $75.00 | 12.5 | $937.50 |
| Jillian Flynn | $75.00 | 0.8 | $60.00 |
| Donyelle Eller | $76.00 | 11 | $836.00 |
| Gina Ottomaniello | $71.00 | 0.5 | $35.50 |
| Wendy Scott | $73.00 | 17.2 | $1,255.60 |
| Lauren Cochrane | $73.00 | 8.6 | $627.80 |
| | | Total Fees: | $15,649.60 |

---

[10] (*See* ECF No. 134 at 5.)

[11] (*See* ECF No. 134 at 5.)

[12] The Court understands that in the First Pavloff Declaration dated June 10, 2024, Ms. Pavloff states, "Safety National agreed to reimburse [LM Insurance] for the fees incurred to defend Pergament. Those fees were presented to [Ms. Pavloff] on documents attached as Exhibit 'c'—they totaled $27,402.10." (ECF No. 121 ¶¶ 10-11.)  Exhibit C includes a single-page summary table listing "Prior Defense Costs" from February 28, 2018 to March 31, 2022 (*See* ECF No. 122-2 at 1), which amount to $27,402.10, along with a multi-page table of "Financials: Checks," which lists the same data. (*See* ECF No. 122-2 at 2-18.)

As set forth above, due to the discrepancies in Safety National's submissions to the Court, the Court relied on the Supplemental Pavloff Declaration and the contemporaneous attorney time records and invoices to determine the award. (*See* ECF Nos. 122, 125, 127, 129, 134.) For each category of fees, the Court multiplied the hours worked by the hourly rate for both attorneys and, where applicable, paralegals. These calculations amount to a total of $76,835.35 in attorneys' fees, plus interest.

## B. Prejudgment and Post-judgment Interest

Under New York law, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract," and the "interest and the rate and date from which it shall be computed

---

Exhibit C **also** includes contemporaneous time records, described as "Claim Defense Summary Report: Audit Detail" that lists the timekeeper, phase, task, activity, net billed hours, and net billed amount between January 28, 2018 and August 13, 2021, as well as the "Total Billed Time for Defense/Matter," which amounts to $16,190.20. (ECF No. 122-2 at 21-67.) Despite ample opportunity to do so, Safety National has provided no explanation or legal authority for the discrepancy between the "Prior Defense Costs" totaling $27,402.10 and the "Total Billed time for Defense/Matter" totaling $16,190.20. Moreover, as set forth above, the Court has independently calculated the total attorneys' fees based on the information provided in the Supplemental Pavloff Declaration to reach a total of $15,649.60. Accordingly, the Court has exercised its discretion to independently calculate and verify an award. *See Wentworth I*, 2022 WL 336456, at *7.

The Court recognizes that that the discrepancy between these two amounts may be accounted for in costs, but even costs must "be supported by appropriate documentation" and the "Prior Defense Costs" table submitted in support of Safety National's motion includes line entries with cut off text and redactions that make it impossible for the Court to independently verify the amount of costs that should be awarded. *Greenburger v. Roundtree*, No. 17-cv-3295 (PGG) (SLC), 2020 WL 6561598, at *14 (S.D.N.Y. Jan. 16, 2020), *report and recommendation adopted by*, 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020). Moreover, Safety National does not account for or describe such costs in its motion.

[13] (*See* ECF No. 134 at 4-5.)

[14] (*See* ECF No. 134 at 4-5.)

shall be in the court's discretion." N.Y. C.P.L.R. § 5001(a). Although "the implication of an insurer's right to contribution is an exercise of the court's equity powers" the Second Circuit has found that "an insurer's contribution action should be viewed as a type of contract action in which the successful plaintiff is entitled to predecision interest as a matter of right." *U.S. Fire Ins.*, 858 F.2d at 888.

"Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." *Id.* § 5001(b). "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* "Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute." *Id.* § 5004.

Where, as here, the interest stems from numerous unpaid obligations over a period of time, the court may calculate interest "from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); *see Oy Saimaa Lines Logistics Ltd. v. Mozaica-N.Y., Inc.*, 193 F.R.D. 87, 91 (E.D.N.Y. 2000) (recommending "that the interest at the statutory rate of nine percent per year should be calculated as of . . . the midpoint between" when the "the outstanding invoices were due"). Accordingly, the Court finds

that the most transparent approach to calculating prejudgment interest is to calculate interest from the midpoint of the due dates of the oldest and most recent outstanding invoices.

As the invoices do not provide a due date, for purposes of calculating interest, the court will assume that payments were due 30 days after the date of each invoice. The oldest outstanding invoice is dated August 31, 2018 (ECF No. 125 at 14), and the Court assumes the oldest outstanding payment was due 30 days later, on September 30, 2018. The most recent outstanding invoice before the Court is dated March 21, 2024 (ECF No. 127 at 1), which the Court assumes was due 30 days later, on April 2, 2024. The midpoint between September 30, 2018 and April 2, 2024 is July 1, 2021.

Accordingly, the court will award Safety National prejudgment interest at a rate of nine percent per annum on the total attorneys' fees award of $76,835.35, calculated from July 1, 2021 until the date of entry of judgment, for a total of $25,785.10 in interest and a total award of $102,620.45.[15] Post-judgment interest shall be awarded as prescribed in 28 U.S.C. § 1961. *See* 28 U.S.C. § 1961(a) (post-judgment "[i]nterest shall be allowed on

---

[15] Specifically, the total prejudgment interest owed per year from July 1, 2021 to July 1, 2024 is $6,915.18 per year ($76,835.35 x .09 annual rate) for a total of $20,745.54 ($6,915.18 x 3 years). In addition, daily prejudgment interest of $18.95 (($76,835.35 x .09 annual rate) / 365 days) is owed starting from July 1, 2024, through the date of judgment in this case. The number of days between July 1, 2024, and the date of entry of judgment, March 24, 2025, is 266. Accordingly, the prejudgment interest owed to Safety National from July 1, 2024 to the date of entry of judgment is $5,039.56 (266 days x $18.95) and the total prejudgment interest owed to Safety National is $25,785.35 ($5,039.56 + $20,745.54).

any money judgment in a civil case recovered in a district court.").

## II.  Safety National's Entitlement to Attorneys' Fees in this Declaratory Judgment Action

In addition to the past defense costs incurred defending Pergament and Raymours in the Underlying Action, Safety National also seeks to recover the fees incurred bringing the Declaratory Judgment Action before this Court.  In support of this argument, Safety National cites to one case, *Houston Cas. Co. v. Prosight Specialty Ins. Co.*, in which the court granted an insured party attorneys' fees in a declaratory judgment action after the insurer "from the jump . . . persistently and seemingly reflexively denied [its] duty [to defend] . . . despite the texts of the [policies], which each made this duty plain."  462 F. Supp. 3d 443, 452 (S.D.N.Y. 2020).  Both Cincinnati and LM Insurance argue that *Houston Casualty* is factually distinguishable, and that the overwhelming consensus is that an insurer may not recover attorney's fees in these circumstances.  This Court agrees.

In general, a "successful party in litigation may not recover attorneys' fees, except where authorized by the parties' agreement, statutory provision or court rule."  *Chase Manhattan Bank, N.A. v. Each Indiv. Underwriter Bound to Lloyd's Policy No. 790/004A89005*, 258 A.D.2d 1, 4 (1st Dep't 1999).  "Although an insured may recover its legal fees in an action brought by the

insurer 'to free itself from its policy obligations,' the insured may not recover its fees 'in an affirmative action brought by [the insured] to settle its rights' under the policy." *Match Grp.*, 2023 WL 9603886, at *3 (quoting *Mighty Midgets v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21 (1979)); *see also Wentworth I*, 2022 WL 336456, at *3; *Fishberg v. State Farm Fire and Cas. Co.*, No. 20-cv-6664 (LJL), 2021 WL 3077478, at *7 (S.D.N.Y. July 20, 2021); *Stiler v. Great N. Ins. Co.*, No. 07-cv-2236 (MDF), 2008 WL 11517681, at *4 (S.D.N.Y. Jan. 2, 2008) (same).

Nevertheless, "an insured who is 'cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations,' and who prevails on the merits, may recover attorneys' fees incurred in defending against the insurer's action." *City Club*, 3 N.Y.3d at 597 (quoting *Mighty Midgets*, 47 N.Y.2d at 21). "The reasoning behind [this rule] is that an insurer's duty to defend an insured extends to the defense of any action arising out of the occurrence, including a defense against an insurer's declaratory judgment action." *City Club*, 3 N.Y.3d at 597-98. "Thus, it is not so much an exception to the American rule that litigants pay their own fees and expenses, as it is a right that 'arises from th[e] contractual duty' to defend." *Danaher Corp. v. Travelers Indem. Co.*, No. 10-cv-121 (JPO) (JCF), 2013 WL 364734, at *3 (S.D.N.Y. Jan. 31, 2013) (quoting *Chase Manhattan*, 258 A.D.2d at 5).

In certain "unusual circumstances, a court may look beyond the labels 'plaintiff' and 'defendant' to determine whether an insured is in an offensive or defensive position vis a vis its insurer in a dispute over the duty to defend." *Danaher*, 2013 WL 364734, at *4.   Courts are in agreement that these unusual circumstances are generally considered any "affirmative action that is *tantamount* to a lawsuit." *Estee Lauder, Inc. v. OneBeacon Ins. Grp., LLC*, 31 Mis. 3d 379, 390 (N.Y. Sup. Ct. 2011). "[A]ctions short of affirmatively filing an action can constitute a 'legal step,'" *Hervochon v. Iona College*, 14-cv-6017 (CS) (PED), 2019 WL 2451431, at *6 (S.D.N.Y. Feb. 15, 2019), however, "courts applying New York law have consistently found that an insurer's disclaimer of coverage, without more, is an insufficient legal step to place the insured in a defensive posture such that an attorneys' fees award is warranted." *Wentworth I*, 2022 WL 336356, at *4.

With this principle in mind, numerous other courts "have persuasively distinguished *Houston Casualty* on the grounds that the insurer's denials of coverage [in that case] were not only repeated but also 'based on an unreasonable interpretation of the policy.'" *A&M Warshaw Plumbing & Heating, Inc. v. Mt. Vernon Fire Ins. Co.*, No. 24-cv-5430 (RA), 2025 WL 69972, at *5 (S.D.N.Y. 2025) (citing *Wentworth Grp. Inc. v. Evanston Ins. Co.*, No. 20-cv-6711, 2022 WL 909794, at *3 (S.D.N.Y. Mar. 29, 2022) (distinguishing

*Houston* because "Defendant there resisted their duty to defend 'from the jump' despite the fact that the relevant insurance policies 'made [that] duty plain.'"); *Match Grp.*, 2023 WL 9603886, at *6 (stating that, in contrast to *Houston Casualty*, the insurer's "denial was not based on an unreasonable interpretation of the policy." (alterations and internal quotation marks omitted))).

Here, unlike in *Houston*, Cincinnati's denial of coverage was not reflexive, persistent, or "based on an unreasonable interpretation of the policy." *Match Grp.*, 2023 WL 9603886, at *6. Indeed, Cincinnati acknowledged that "its coverage of Raymours is primary and non-contributory" to Safety's coverage, but disputed its coverage of Pergament as an additional insured based in part upon the reasonable argument that Pergament "is not explicitly named as an additional insured in the Cincinnati Insurance Policy". *LM Ins.*, 695 F. Supp. 3d at 197–98. Accordingly, the Court finds that Cincinnati's denial of coverage was not "tantamount to a lawsuit," *Estee Lauder*, 31 Mis. 3d at 390, as it was in *Houston Casualty* and Safety National was not placed in a "defensive posture such that an attorneys' fees award is warranted" for the Declaratory Judgment Action. *Match Grp.*, 2023 WL 9603886 at *4.

## Conclusion

For the foregoing reasons, Safety National's motion for

attorney's fees in the Declaratory Judgment Action is DENIED and Safety National's motion for attorney's fees in the Underlying Action is GRANTED. Cincinnati owes Safety National $102,620.45 in attorneys' fees, which includes prejudgment interest at a rate of nine percent per annum since July 1, 2021, plus post-judgment interest as prescribed in 28 U.S.C. § 1961.

**So ordered.**

Dated:      March 24, 2025
            Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York